IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ASHLEY REEVES, *as Personal Representative of the Estate of Carl Albert Reeves*, | ) ) ) ) | No. 2:12-cv-02765-DCN |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| TOWN OF COTTAGEVILLE, *et al.*, | ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants' motion to disqualify plaintiff's counsel. The court denied the motion at a hearing held on August 20, 2014. What follows is a further explanation of the court's ruling.

## I.  BACKGROUND

On August 28, 2012, plaintiff Ashley Reeves ("Reeves") filed this action in the Court of Common Pleas for the Fourteenth Judicial Circuit of South Carolina. Reeves brings her claims against the Town of Cottageville ("Cottageville" or "the town"), the Town of Cottageville Police Department ("the police department"), and Cottageville police officer Randall Price ("Price") in her capacity as personal representative of the estate of Carl Albert Reeves ("Bert"). Reeves's complaint alleges that Price unlawfully shot and killed Bert in retaliation for Bert's complaints about Price's aggressive policing tactics. Compl. ¶¶ 12-15. The complaint brings the following claims:  (1) negligence against all defendants, (2) negligent hiring and supervision against Cottageville and its police department, (3) battery against all defendants, (4) assault against all defendants, (5) civil rights violation pursuant to 42 U.S.C. § 1983 against Price, (6) municipal

1

liability for civil rights violation pursuant to 42 U.S.C. § 1983 against town and police

department, (7) survival action against all defendants, and (8) wrongful death against all

defendants.

On July 29, 2014, six days before the scheduled pretrial conference and thirteen

days before trial was set to begin, defendants filed the pending motion to disqualify

counsel.  Upon the filing of the motion, the court immediately cancelled the pretrial

hearing and jury trial.  Reeves opposed the motion on August 13, 2014.[1]

On August 5, 2014, the court directed all defense counsel to submit affidavits

describing when, where, and how they first learned that plaintiff's attorney W. Mullins

McLeod, Jr. formerly represented Cottageville as its town attorney.  On August 18, 2014,

defense counsel timely filed their affidavits.   Defendants also filed a reply in support of

their motion on August 18, 2014.  The court had the benefit of the parties' oral argument

at a hearing held on August 20, 2014.

## II.  STANDARDS

"A motion to disqualify counsel is a matter subject to the court's general

supervisory authority to ensure fairness to all who bring their case to the judiciary for

resolution."  Clinton Mills, Inc. v. Alexander & Alexander, Inc., 687 F. Supp. 226, 228

(D.S.C. 1988).  The South Carolina Code of Professional Responsibility sets forth the

ethical standards for attorneys who practice in this district.  See Local Civil Rule 83.I.08

DSC, RDE Rule IV(B) ("The Code of Professional Responsibility adopted by this Court

is the South Carolina Rules of Professional Conduct . . . adopted by the Supreme Court of

the State of South Carolina . . . .").  "Violation of any provision of the South Carolina

---

[1] Reeves simultaneously filed a motion for sanctions that alleges that the instant motion was filed frivolously and with an improper purpose. The court will take up the sanctions motion once it is ripe.

Rules of Professional Conduct" qualifies as sanctionable misconduct. Id. Rule V(H)(2);
see also Clinton Mills, 687 F. Supp. 226, 228 (D.S.C. 1988) ("It is the court's
responsibility to use its disqualification power to see that those who practice before the
court adhere to the South Carolina Code [of Professional Responsibility]."). "The court
has a duty to maintain the highest ethical standards of professional conduct to insure and
preserve trust in the integrity of the bar." Latham v. Matthews, Docket No. 6:08-cv-
02995, 2011 WL 52609, at *2 (D.S.C. Jan. 6, 2011). Disqualification is, however, "a
drastic remedy, and the moving party has a high standard of proof to demonstrate that
disqualification is required." Id.

### III.   DISCUSSION

Defendants contend that Reeves' counsel should be disqualified because Mr.
McLeod and his former law firm[2] represented Cottageville between 2004 and 2007.
Defendants argue that Mr. McLeod's former position as Cottageville's town attorney,
when combined with his current representation of Reeves, violates Rules 1.6(a) and 1.9
of the South Carolina Rules of Professional Conduct ("the Professional Rules").[3]

**A.  Defendants' Motion Is Untimely.**

As a preliminary matter, Reeves contends that defendants' motion is untimely and
so has been waived. She argues that defendants' motion is simply a tactical maneuver to
delay trial and run up her legal costs.

---

[2] Mr. McLeod worked as Cottageville's town attorney while he was a partner at the law
firm of Pierce Herns Sloan & McLeod, now known as Pierce Herns Sloan & Wilson.

[3] The parties also debate whether Price, who has never been represented by Mr. McLeod,
may properly join the other defendants in this motion. The court need not delve into this issue as
it denies the motion on other grounds.

"Courts have held that a party's failure to timely raise a motion to disqualify may result in a waiver." Buckley v. Airshield Corp., 908 F. Supp. 299, 307 (D. Md. 1995); see also Sorenson v. First Wis. Nat'l Bank of Milwaukee, N.A., 931 F.2d 19 (8th Cir. 1991); Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 729-30 (11th Cir. 1988); In re Yarn Processing Patent Validity Litig., 530 F.2d 83 (5th Cir. 1976). However, delay alone is not a dispositive factor. Buckley, 908 F. Supp. at 307. Instead, courts consider factors such as "when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and in particular whether the motion was delayed for tactical reasons; and whether disqualification would result in prejudice to the nonmoving party." Id. (citing Emp'rs Ins. of Wausau v. Albert D. Seeno Constr. Co., 692 F. Supp. 1150, 1165 (N.D. Cal. 1988)). Filing a motion to disqualify counsel just a few weeks short of trial has often been interpreted as an impermissible attempt to gain a tactical advantage. Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978) ("This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."); Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1119 (D.N.J. 1993) (motion to disqualify counsel denied when filed three years after litigation commenced and four months prior to trial, and information was known from the outset); Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1209 (E.D. Pa. 1992) (motion to disqualify counsel denied when filed two years after the action commenced and three weeks prior to trial).

4

The legal invoices that defendants submitted demonstrate that Cottageville itself has known of Mr. McLeod's prior representation since before this lawsuit began.[4]  See Defs.' Mot. Ex. 4.  Cottageville's attorney Vinton D. Lide first learned of Mr. McLeod's prior representation "during the business week beginning Monday, June 16, 2014," when defense counsel's private investigator told Mr. Lide that he had found a newspaper article that described Mr. McLeod as the town's attorney.  Lide Aff. ¶ 3.  Price's attorneys Lake Summers, Katherine Phillips, and Charles Thompson first learned of Mr. McLeod's prior representation on Monday, June 23, 2014.  Phillips Aff. ¶ 6; Summers Aff. ¶ 5; Thompson Aff. ¶ 4.  On June 23, 2014, Mr. Lide and Mr. Summers both received a document "which showed payments made from the Town of Cottageville to Mr. McLeod and/or his firm for the years 2004 [to] 2006."  Lide Aff. ¶ 4; Summers Aff. ¶5(f). Michael Pauley, Mr. Lide's law partner, first learned of this issue on June 30, 2014, when he arrived back in the office from a vacation.  Pauley Aff. ¶ 7

Defense counsel's affidavits establish that they knew, at least five weeks before filing the instant motion, that Mr. McLeod had previously served as Cottageville's town attorney.  Instead of alerting the court and opposing counsel of this potentially serious issue, defense counsel decided to prioritize jury selection matters, depositions, and pretrial motions practice over filing the instant motion.  See Summers Aff. ¶5(j)(1)-(10). That choice is a bizarre one, as defense counsel knew, should have known, or at the very least hoped that the instant motion would lead to postponement of trial.[5]  Defense

---

[4] Because of turnover in town staff, defense counsel represented at the hearing that current town employees only learned of Mr. McLeod's previous position as the town attorney within the last few weeks.

[5] At the hearing, Mr. Lide explained that while he was not certain whether the motion to disqualify would delay the trial, he certainly hoped that would be the case.

counsel's choice is exactly the sort of maneuvering that other courts have refused to reward. It is also a decision that has wasted the parties' time and money, frittered away precious judicial resources, and needlessly delayed trial.

Several factors weigh in favor of finding that defendants have waived their right to object to Reeves' choice of counsel. Cottageville itself has known or should have known for the entirety of this litigation that Mr. McLeod was its town attorney until 2007. Though defense counsel may not have known of the issue until mid-June, they chose to spring this motion on Reeves (and the court) at the last possible moment in hopes of delaying trial. In addition, disqualifying plaintiff's counsel at this late date would surely unduly prejudice Reeves, who, but for the filing of this untimely and frivolous motion, would have already heard the jury's verdict in her case. For these reasons, the court finds that defendants have waived their objection to Mr. McLeod's appearance as Reeves' counsel.

### B. Defendants' Motion Also Fails on the Merits.

Even if defendants had not waived their objections to Reeves' choice of counsel, the motion to disqualify would fail on its merits.

Defendants argue that Mr. McLeod violated both Rules 1.6 and 1.9 of the Professional Rules. Rule 1.6 of the Professional Rules describes the duty of confidentiality that attorneys owe to current and former clients. This rule "governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client." S.C. Prof'l Conduct R. 1.6, cmt. 1. In relevant part, Rule 1.6(a) states that "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, [or] the disclosure is

impliedly authorized in order to carry out the representation . . . ." This duty of

confidentiality continues even after the attorney-client relationship has terminated. S.C.

Prof'l Conduct R. 1.6, cmt. 19. Rule 1.9(b)-(c) of the Professional Rules govern conflicts

of interest. That rule states, in relevant part:

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
>> (1) whose interests are materially adverse to that person; and
>>
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
>
> unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>>
>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

S.C. Prof'l Conduct R. 1.9(b)-(c). When determining the scope of a matter for purposes

of Rule 1.9, "[t]he underlying question is whether the lawyer was so involved in the

matter that the subsequent representation can be justly regarded as a changing of sides in

the matter in question." Id. cmt. 2. "Matters are 'substantially related' for purposes of

this Rule if they involve the same transaction or legal dispute or if there otherwise is a

substantial risk that confidential factual information as would normally have been

obtained in the prior representation would materially advance the client's position in the

subsequent matter." Id. cmt. 3; see also Browder v. Ross Marine, LLC, Docket No.

2005-UP-613, 2005 WL 7084981, at *2 (S.C. Ct. App. Dec. 8, 2005) ("In determining

whether the matter is 'substantially related,' one should consider, among other things,

7

whether the affected lawyer would have or reasonably could have learned <u>confidential</u>

information in the first representation that would be of significance in the second.")

(emphasis in original) (internal quotation omitted)).

> Information that has been disclosed to the public or to other parties
> adverse to the former client ordinarily will not be disqualifying. . . .  In the
> case of an organizational client, general knowledge of the client's policies
> and practices ordinarily will not preclude a subsequent representation; on
> the other hand, knowledge of specific facts gained in a prior representation
> that are relevant to the matter in question ordinarily will preclude such
> representation.

S.C. Prof'l Conduct R. 1.9 cmt. 3.  As the Fourth Circuit has noted, "disqualification of a

litigant's chosen counsel for violation of an ethical canon . . . may not be rested on mere

speculation that a chain of events whose occurrence theoretically could lead counsel to

act counter to his client's interests might in fact occur."  <u>Shaffer v. Farm Fresh, Inc.</u>, 966

F.2d 142, 145 (4th Cir. 1992) (applying Virginia's rules of professional conduct).

As to the alleged Rule 1.6 violation, defendants' motion relies on nothing more

than conjecture.  At the hearing, Mr. Summers explained that <u>if</u> Mr. McLeod, in his

former role as Cottageville's town attorney, <u>had</u> learned any confidential information

about a 2006 Cottageville police shooting ("the Modica shooting"), then he <u>could have</u>

improperly passed such information on to expert witness James Ginger, Ph.D., or <u>could</u>

<u>have</u> impermissibly utilized that information when deposing current and former

Cottageville employees.  This argument fails for several reasons.  First, Defendants have

not provided any evidence that Mr. McLeod – or any other attorney– was <u>ever</u> asked to

advise the town or police department on matters relating to the Modica shooting.  But for

one hour that an associate at Pierce Herns Sloan & McLeod spent reviewing the

complaint filed in the <u>Modica</u> case, there is no evidence that Mr. McLeod or his

associates ever worked on that matter.[6]  Defs.' Mot. Ex. 4 at 2.  Other defense exhibits

demonstrate that the Modica litigation was handled by an attorney from a law firm in

Bluffton, South Carolina – not by Mr. McLeod's firm.  See id. Exs. 7-9, 12.  Second, Dr.

Ginger denied receiving any improper confidential information from Mr. McLeod or his

associates.  Ginger Dep. 136:9-138:12.  Indeed, Dr. Ginger explained that his opinions

about Cottageville's policing strategies are based on his review of materials from this

case.  Id.  Finally, Mr. Summers admitted at the hearing that the deposition questions that

Mr. McLeod asked current and former Cottageville employees were those that any

competent attorney would ask in his or her role as Reeves' counsel.

The alleged Rule 1.9 violation similarly fails.  Even assuming that this case is

"substantially related" to the litigation that arose after the Modica shooting, there is no

evidence that Mr. McLeod or his former law firm ever represented Cottageville in the

Modica matter.  As noted above, defendants have not demonstrated that Mr. McLeod or

his former law firm ever counseled, represented, or advised Cottageville with regards to

the Modica shooting.  As a result, there can be no conflict of interest.[7]

In support of their motion to disqualify plaintiff's counsel, defendants ask the

court to rely on a series of inferences that have no factual basis.  This is precisely the sort

---

[6] Mr. McLeod subsequently left Pierce Herns Sloan & McLeod and established his own practice.  The associate who reviewed the Modica pleadings remained with Mr. McLeod's former firm.

[7] As Reeves points out, defendants have also failed to show that Mr. McLeod or his firm have used information not generally available to the public.  As explained in the comments to Rule 1.9, an attorney's general knowledge of an organizational client's policies or procedures will not create a conflict of interest with another client.  Likewise, an attorney's knowledge of publically available facts about a client will not create a conflict of interest with another client.

9

of speculative, specious claim rejected by the <u>Shaffer</u> court.  Defendants have not shown

that the drastic remedy of disqualification is appropriate.  They have not come close.[8]

### IV.   CONCLUSION

Based on the foregoing, the court DENIES defendants' motion to disqualify

counsel, ECF No. 109.  Jury selection in this case will be held – for the second time – on

September 30, 2014.  Trial will begin on October 1, 2014.

**AND IT IS SO ORDERED**.


_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 26, 2014**
**Charleston, South Carolina**

---

[8] The court notes, for the parties' benefit, that it would likely reject any attempt at trial to bring up Mr. McLeod's former representation of Cottageville.  The court would likely view any such attempt as improperly confusing the issues pursuant to Rule 403 of the Federal Rules of Evidence.