# Exhibit B

## Unpublished Cases Cited in Defendants' Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees

*Ashley Reeves, as Personal Representative of the Estate of Carl Albert Reeves v. Town of Cottageville, the Town of Cottageville Police Department and Randall Price, individually*

*CA #:  2:12-cv-02765-DCN*

# Index to unpublished cases cited.

1. *1st Westco Corp. v. School District of Philadelphia*, 1993 WL 117539 ). ……………2

2. *Karuk Tribe of California v. United States Forest Service*, 2006 WL 228943. ……….2

3. *Jessco, Inc. v. Builders Mut. Ins. Co.,* 2012 WL 1825340. ……………………………5, 7

4. *Muhler Co., Inc. v. Window World of North Charleston, LLC*, 2014 WL 4269078 . ….6

5. *Grayson Consulting, Inc. v. Cathcart*, 2013 WL 436217. ……………………………...6

6. *Froggy's Carwash LLC v. Jim Coleman Co.*, 2012 WL 1936999 . ……………………..7

7. *Gregg v. Ham*, 2010 WL 5060583. ……………………………………………………...7

8. *Glidewell v. City of Greenville*, 2012 WL 951777. …………………………………….7

9. *Child Evangelism Fellowship v. Anderson School District*, 2007 WL 1302692. ………7

# Case 1.


*1st Westco Corp. v. School District of Philadelphia*, 1993
WL 117539

1993 WL 117539

1993 WL 117539
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

1ST WESTCO CORP. and Richard J. Lee, et al.,
Plaintiffs
v.
SCHOOL DISTRICT OF PHILADELPHIA,
Defendant
v.
Ernest D. PREATE, Jr., Individually and in his
official capacity as Attorney General of the
Commonwealth of Pennsylvania,
and
Donald M. Carroll, Jr., Individually and in his
official capacity as Secretary of Education of the
Commonwealth of Pennsylvania, Third–Party
Defendants

No. CIV. A. 91-2727. | March 31, 1993.

### ORDER

GAWTHROP.

*1 AND NOW, this day of March, 1993, upon consideration of third-party defendants' Motion to Defer Consideration of Plaintiffs' Petition for Attorneys' Fees, and plaintiffs' response thereto, the motion is GRANTED. Plaintiffs' Petition for Attorney's Fees is hereby STAYED pending disposition of third-party defendants' appeal of this court's Opinion and Order of January 8, 1993.*

It is further ORDERED that, if the Third Circuit affirms that Opinion and Order, third-party defendants shall file their response to plaintiff's Petition for Attorney's Fees within twenty (20) days of the Third Circuit's decision.

### Footnotes

\*  On January 8, 1992, I entered summary judgment in favor of the plaintiffs, finding that Section 7–754 of the Pennsylvania Public School Code, 24 P.S. § 7–754, is unconstitutional because it violates the Privileges and Immunities Clauses of the United States and Pennsylvania Constitutions. Having prevailed, plaintiffs are entitled to reasonable attorneys' fees under 42 U.S.C. § 1988. However, third-party defendants have taken an appeal. If the Third Circuit were to reverse the Opinion and Order of January 8, 1992, the plaintiffs would no longer be "prevailing parties." Therefore, they would not be entitled to attorneys' fees under § 1988. If I were to decide, before the Third Circuit adjudicates the appeal, the amount of attorneys' fees to which plaintiff is entitled, my decision could be rendered moot when that court issues its decision. It makes sense, for reasons of judicial economy and reducing the parties' expenses, to stay the petition for attorneys' fees.
   The plaintiffs rely on *Midnight Sessions, Ltd. v. City of Philadelphia*, 755 F.Supp. 652 (E.D.1991), for the proposition that I should decide the attorneys' fees issue now. In that case, Judge Newcomer found that the plaintiffs' civil rights had been violated. The defendants took an appeal. While the case was on appeal, Judge Newcomer decided the amount of attorneys' fees to which the plaintiffs were entitled. The Third Circuit then reversed the underlying decision and vacated the award of attorneys fees without commenting on the propriety of the timing of Judge Newcomer's attorneys' fees decision. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir.1991).
   If anything, the lesson of *Midnight Sessions* is that, absent undue hardship (which Judge Newcomer did find), the district court would be well-advised to await the appellate outcome, since that outcome will determine whether the plaintiffs really are "prevailing parties." To indulge in the prolix task of parsing the plaintiffs' fee petition with the requisite sharp pencil, only to find that that jurisprudential adventure in adjudication turned out to be but an academic exercise, would be the epitome of judicial diseconomy. I do not find that the plaintiffs in this case will suffer undue hardship from having to wait a few months to receive their award of attorneys' fees, should their ultimate entitlement thereto be determined. Hence, this Order.

---

**End of Document**                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.

**1st Westco Corp. v. School Dist. of Philadelphia, Not Reported in F.Supp. (1993)**

1993 WL 117539

Case 2.

*Karuk Tribe of California v. United States Forest Service*,
2006 WL 228943

2006 WL 228943

2006 WL 228943
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
Oakland Division.

KARUK TRIBE OF CALIFORNIA, Plaintiff,
v.
UNITED STATES FOREST SERVICE; Margaret
Boland, Forest Supervisor, Klamath National
Forest, Federal Defendants,
and
The New 49ers, Inc. and Raymond Koons,
Defendant-Intervenors.

No. Civ. 04-4275(SBA). | Jan. 30, 2006.

**Attorneys and Law Firms**

James Russell Wheaton, The First Amendment Project, Oakland, CA, Iryna A. Kwasny, Joshua Borger, Environmental Law Foundation, Oakland, CA, Jeffrey C. Parson, Western Mining Action Project, Boulder, CO, Roger Flynn, Western Mining Action Project, Lyons, CO, for Plaintiff.

Barclay Thomas Samford, U.S. Dept. of Justice Environment & Natural Resources Division, Denver, CO, Brian C. Toth, US Dept of Justice Env't & Natural Resources Div General Litigation Section, Washington, DC, James L. Buchal, Portland, OR, Robert Dabney Eastham, Seiad Valley, CA, for Defendants.

**MODIFIED ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO STAY PLAINTIFF'S PETITION FOR ATTORNEYS' FEES**

SAUNDRA BROWN ARMSTRONG, J.

**[Docket Nos. 107, 117]**

*\*1* The matter is before the Court upon Federal Defendants' motion to stay litigation of Plaintiff's petition for attorneys' fees and expenses until this case is resolved on appeal. Good cause exists for a stay: it will conserve judicial resources by preventing the consideration of multiple petitions; it will avoid the possibility that Plaintiff is overcompensated in this case; and it will

assist the Court in its inquiry into whether the position of the United States was substantially justified. As set forth below, nothing in Plaintiff's opposition brief demonstrates that the requested stay should not be granted.

**BACKGROUND**

This action involved challenges under the National Environmental Policy Act ("NEPA"), National Forest Management Act ("NFMA"), Endangered Species Act ("ESA"), and other statutes and regulations, to suction dredge mining operations on the Klamath National Forest. On April 22, 2005, prior to briefing on the merits, the parties entered a stipulation resolving Plaintiff's claims against five plans of operation. [Docket No. 50]. The parties then briefed the merits of Plaintiff's remaining claims. On July 1, 2005, the Court denied Plaintiff's motion for summary judgment. [Docket No. 104] The Court entered final judgment in favor of Federal Defendants on July 11, 2005, and the case was closed. [Docket No. 105].

Plaintiff filed a notice of appeal on September 9, 2005, indicating that it would be docketing an appeal in the Ninth Circuit Court of Appeals. On October 7, 2005, Plaintiff filed a petition seeking attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). Plaintiff seeks an award of $115,652.21 for claims that were subject to a stipulated motion to dismiss that was entered prior to the beginning of summary judgment briefing. [Docket No. 107].

On November 9, 2005, Federal Defendants filed a motion to stay Plaintiffs' fee petition until the conclusion of any appeal in the Ninth Circuit. [Docket No. 117]. Pursuant to a stipulated schedule entered by this Court, Plaintiffs filed an opposition to the motion to stay on December 5, 2005. [Docket No. 120]. Federal Defendants filed their reply memorandum on December 12, 2005. [Docket No. 121]. Pursuant to Civil L.R. 7-1(b), the Court finds that this motion is appropriate for resolution without oral argument.

**ANALYSIS**

The EAJA provides a limited waiver of sovereign immunity for attorneys' fees and costs against the United

Karuk Tribe of Cal. v. U.S. Forest Service, Not Reported in F.Supp.2d (2006)

2006 WL 228943

States in cases where Plaintiff is a prevailing party, unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. *See* 28 U.S.C. §§ 2412(a), 2412(d)(1)(A). Federal Defendants argue that the Court has power to stay Plaintiff's motion, and that such a stay is appropriate because it would promote judicial economy and avoid the risk of overcompensation should Plaintiff decide to file a second fee petition following its appeal. Federal Defendants also argue that Plaintiff has not demonstrated that it would be prejudiced by a stay. Each of these arguments is addressed below.

**\*2** The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 707-08, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citing *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). This discretionary power extends to the timing of consideration for petitions for attorney's fees while the matter is under appeal. *See, e.g., Glaxo Group Limited v. Apotex, Inc.,* 272 F.Supp.2d 772, 778 (N.D.Ill.2003) (exercising discretion to stay fee petition until conclusion of appeal); *1st Westco Corp. v. School District of Philadelphia,* 1993 WL 117539 (E.D.Pa.1993) (same); *see also Oberdorfer v. Glickman,* 2001 WL 34045732 (D.Or. Sept.14, 2001) (noting defendants' motion to postpone consideration of petition for fees under EAJA until conclusion of appeal was granted). Plaintiff does not argue that this Court lacks the discretionary power to stay a fee petition pending resolution of an appeal. Indeed, such stays are not unusual and are within the Court's discretion. *See Jones,* 520 U.S. at 707-08; *Glaxo,* 272 F.Supp.2d at 778.[1]

A stay of Plaintiff's fee petition is appropriate because it would promote judicial economy and avoid the risk of overcompensation in the event that Plaintiff is successful on appeal. First, a stay is in the interest of judicial economy. As the Ninth Circuit has stated in another context, waiting until after all appeals have been exhausted to adjudicate a fee application "avoids the possibility that multiple fee applications will be necessary, a weighty consideration given that EAJA fees are intended specifically for individuals with limited resources." *Al-Harbi v. Immigration and Naturalization Serv.,* 284 F.3d 1080, 1084 (9th Cir.2002). Given that it would save both the resources of the Court and the parties to consider a fee application by Plaintiff once at the conclusion of all appeals, rather than twice, a stay would promote the interest of judicial economy.

In its opposition, Plaintiff does not dispute that judicial resources would be saved by litigating one fee petition

rather than two. Instead, Plaintiff urges the Court to depart from the Supreme Court's admonition that the substantial justification inquiry should be conducted based on the case "as an inclusive whole," *Comm'r INS v. Jean,* 496 U.S. 154, 161-62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), and instead urges that the disposition of the case on appeal is irrelevant because the claims it settled are "entirely separate" from the claims it litigated and lost. Pl.'s Resp. at 8. Plaintiff, however, points to no caselaw that would justify departing from the well-established principle that the substantial justification inquiry is based on the entire case. *United States v. Rubin,* 97 F.3d 373, 375 (9th Cir.1996) (EAJA "favors treating a case as an inclusive whole, rather than as atomized line items") (quoting *Jean,* 496 U.S. at 161-62); *Bullfrog Films, Inc. v. Wick,* 959 F.2d 782, 784 (9th Cir.1992) ("The district court is to take into account the totality of the circumstances in deciding whether the government's position is substantially justified.").

**\*3** A stay would also avoid the risk that Plaintiff will be overcompensated for time spent on this case. Plaintiff's timesheets do not specify which claim particular hours were expended on, and as a consequence, Plaintiff is seeking an award of fees both for the claims it settled and the claims that it lost. *See, e.g., Oberdorfer,* 2001 WL 34045732 (disallowing compensation for undifferentiated "block-billing" where the Court could not assess the time spent on specific tasks). If fees were awarded at this time and if the Plaintiff lost on appeal, then Plaintiff will have received compensation for claims for which it was not a prevailing party and will thus have been overcompensated. Similarly, if fees were awarded at this time and Plaintiff prevailed on appeal, then the Court and parties would be forced to determine the hours for which Plaintiff had already been compensated. Both of these problems are easily avoided by staying Plaintiff's fee petition until its appeal has concluded.

Finally, Plaintiff argues that it may be a year or more before oral argument on its appeal is scheduled, and that a stay would therefore impose "undue hardship" on the Plaintiff. Pl.'s Resp. at 9. Plaintiff, however, has not proffered any actual evidence of hardship. When weighed against the benefits of a stay discussed above, Plaintiff's allegation of hardship fails to provide an sufficient basis for denying Defendants' motion to stay. *See Jones,* 520 U.S. at 707-08.

## CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED

Karuk Tribe of Cal. v. U.S. Forest Service, Not Reported in F.Supp.2d (2006)

2006 WL 228943

that Federal Defendants' Motion to Stay [Docket No. 117] is GRANTED.

IT IS FURTHER ORDERED THAT Plaintiffs' Motion for Attorney's Fees and Expenses [Docket No. 107] is hereby DENIED WITHOUT PREJUDICE. The February 28, 2006 hearing on Plaintiff's Motion for Attorney's Fees and Expenses is therefore VACATED. Plaintiff is hereby granted leave to re-file its Motion for Attorney's

Fees and Expenses and supporting declarations no later than thirty (30) days following the expiration of the time required for filing a certiorari petition after any decision by the Court of Appeals.

IT IS SO ORDERED.

Footnotes

1    Plaintiff seeks to distinguish *Glaxo Group* and *1st Westco Corp.* on grounds that the fee petitions involved in those cases were brought under fee shifting statutes other than EAJA. This distinction is irrelevant: Plaintiff points to nothing particular to the EAJA statute that would suggest that Congress intended to deprive the Court of its "broad discretion to stay proceedings as an incident to its power to control its own docket." *Jones,* 520 U.S. at 706-07.

End of Document    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Case 3.

*Jessco, Inc. v. Builders Mut. Ins. Co.,* 2012 WL 1825340

Jessco, Inc. v. Builders Mut. Ins. Co., Slip Copy (2012)

2012 WL 1825340
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Charleston Division.

JESSCO, INC., Plaintiff,
v.
BUILDERS MUTUAL INSURANCE CO.,
Defendant.

C.A. No. 2:08–CV–1759–PMD. | May 18, 2012.

**Attorneys and Law Firms**

Steven L. Smith, Smith and Collins, Zachary James
Closser, Smith and Koontz, Robert H. Hood, William
Marshall O'Neil, Hood Law Firm, Charleston, SC, for
Plaintiff.

Stephen P. Groves, Sr., Nexsen Pruet, Charleston, SC, for
Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

*1 This matter is before the Court upon receipt of
Plaintiff's Memorandum and Clarification of Fees
Statement submitted at the Court's request on May 4,
2012.

### AWARD OF ATTORNEY FEES & COSTS

The determination of the reasonableness of a fee award
begins with the court's calculation of the lodestar figure.
*See Robinson v. Equifax Information Servs., LLC,* 560
F.3d 235, 243 (4th Cir.2009). The lodestar amount is
calculated by taking the "number of hours reasonably
expended on the litigation [and] multipl[ying] [it] by a
reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S.
424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40, (1983). "If the
hourly rate is properly calculated, the product of
reasonable hours times the reasonable rate normally
provides a reasonable attorney's fee ...." *Daly v. Hill,* 790
F.2d 1071, 1077 (4th Cir.1986) (internal quotation marks
and citations omitted). The Fourth Circuit has adopted a

12–factor test for making a lodestar determination:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the
> questions raised; (3) the skill
> required to properly perform the
> legal services rendered; (4) the
> attorney's opportunity costs in
> pressing the litigation; (5) the
> customary fee for like work; (6) the
> attorney's expectations at the outset
> of the litigation; (7) the time
> limitations imposed by the client or
> circumstances; (8) the amount in
> controversy and the results
> obtained; (9) the experience,
> reputation and ability of the
> attorney; (10) the undesirability of
> the case within the legal
> community in which the suit arose;
> (11) the nature and length of the
> professional relationship between
> attorney and client; and (12)
> attorneys' fees awards in similar
> cases.

*Burnley v. Short,* 730 F.2d 136, 141 n. 2 (4th Cir.1984).
These factors need not be strictly applied. *See E.E.O.C. v.
Serv. News. Co.,* 898 F.2d 958, 965 (4th Cir.1990).

On April 2, 2012, Plaintiff's counsel submitted a Motion
for Fees and Costs *After* Remand and attached a client
ledger that showed Jessco had incurred attorney fees from
January 14, 2010 to January 26, 2012 in the amount of
$41,172.50.00, exclusive of time spent on the motion.[1]
The costs incurred on appeal were $651.00. Plaintiff's
counsel bills $200.00 per hour.

BMIC did not contend that the hourly rate was
unreasonable,[2] but argued that the fees were excessive.
According to the client leger, beginning on February 24,
2010[3] up through oral argument before the Fourth Circuit
on January 26, 2012, counsel expended approximately
200 hours of labor. Counsel provided descriptions of the
work performed and the time spent on each task. *See
NGM Inc. Co. v. Carolina's Power Wash & Painting,
LLC,* No. 2:08–3378, 2010 WL 3258134, at *4 (D.S.C.
July 6, 2010) (stating that "fee applicant has burden of
proving hours spent and how those hours were allotted to
specific tasks"). After the Court determined that several
descriptions were vague, Plaintiff's counsel submitted a
memorandum clarifying those tasks specifically carried
out starting March 1, 2010 through May 12, 2010. In that

Jessco, Inc. v. Builders Mut. Ins. Co., Slip Copy (2012)

memorandum, Plaintiff acknowledged that a portion of the expenses incurred in that time frame, totaling $3,396.25.00, were in fact associated with tasks unrelated to BMIC's refusal to defend and should therefore be excluded. The Court agrees. Additionally, 15.25 hours of labor carried out in that time frame were spent on matters related to the underlying action that had developed since this Court's January 29, 2010 Order. Because BMIC had a duty to defend Jessco in the underlying action, the cost for these hours, just like those incurred prior to appeal and previously awarded to Jessco, are the responsibility of BMIC.

**\*2** After excluding those hours expended on tasks unrelated to BMIC's breach of its duty to defend, counsel spent 182.75 hours for which BMIC must pay. In light of the information provided and known to the Court, the amount of hours spent by Plaintiffs counsel defending Jessco in these matters is reasonable.

Multiplying the number of hours Steven Smith spent after BMIC appealed this matter by his hourly rate of two hundred ($200.00) dollars yields a fee of $36,501.25.00.[4] The Court has also reviewed the request for costs in this matter of $651.00 and finds those costs to be reasonable.

### CONCLUSION

It is therefore **ORDERED** that Plaintiff Jessco is entitled to a $37,152.25.00 award from Defendant, which shall bear post-judgment interest at the legal rate.

**AND IT IS SO ORDERED.**

Footnotes

[1]     Counsel does not state what amount of time he spent in preparing the motion.

[2]     In any event, in relying on its own knowledge of the market, the Court finds Plaintiff's counsel's rate of $200.00 adequately takes the relevant factors into account and is reasonable. *See CoStar Group, Inc. v. LoopNet, Inc.,* 106 F.Supp.2d 780, 788 (D.Md.2000) (finding that the court may rely on its own knowledge of the market in the absence of sufficient documentation). Attorney Steven L. Smith has been practicing law for over twenty five years. He currently practices at Smith & Closser, PA, previously Smith & Collins, PA., which Mr. Smith founded. *See Burns v. Anderson,* No. 1:02CV1326 JCC, 2006 WL 2456372, at \*9 (E.D.Va. Aug.22, 2006) ("In *American Canoe Association v. United States Environmental Protection Agency,* 138 F.Supp.2d 722 (E.D.Va.2001), [the United States District Court for the Eastern District of Virginia] approved hourly rates ranging from $200.00 to $250.00 for attorneys with experience equivalent to that of a partner, $100.00 to $150.00 for attorneys with experience equivalent to that of an associate, and $55.00 to $85.00 for paralegals.").

[3]     BMIC appealed this Court's Order dated January 29, 2010; therefore, the Court begins its examination of the ledger with the first fee incurred by Jessco after this date.

[4]     After altering the calculation to reflect that according to the client ledger, .75 hours were billed at a lower rate of $135.00 per hour.

End of Document                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Case 4.

*Muhler Co., Inc. v. Window World of North Charleston, LLC*, 2014 WL 4269078

Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)
2014 WL 4269078

2014 WL 4269078
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Charleston Division.

The MUHLER COMPANY, INC., Plaintiff,
v.
WINDOW WORLD OF N. CHARLESTON LLC,
Defendant.

No. 2:11–cv–00851–DCN. | Signed Aug. 28, 2014.

**Attorneys and Law Firms**

Christine Kent Toporek, Donald Jay Davis, Jr., William
Leroy Howard, Sr., Young Clement Rivers and Tisdale,
Charleston, SC, for Plaintiff.

**ORDER**

DAVID C. NORTON, District Judge.

**\*1** This matter is before the court on plaintiff The Muhler
Company, Inc.'s ("Muhler") motion for entry of judgment
and for damages against defendant Window World of N.
Charleston, LLC ("WWNC"). Based on the pleadings
filed in this matter, as well as the uncontroverted evidence
presented at the hearing, the court grants Muhler's motion
for judgment and awards damages against WWNC as set
forth herein.

**I. BACKGROUND**

The following facts are drawn from the proposed order
emailed to chambers by Muhler and Muhler's motion for
default judgment.

Muhler and WWNC are direct competitors in the business
of supplying and installing replacement windows in
Charleston County, South Carolina, and in neighboring
coastal counties ("the market"). WWNC advertised
through its website and other media that it adhered to the
"strictest industry standards" in the conduct of its
replacement window installation services. It advertised
that it provided the "best for less" and that it was "lead
certified." These representations were aimed at and

reached consumers in the market. Similarly, Muhler
advertised in the market that it "strives to exceed
customer expectations by offering the highest level of
service and value," that it "complies with industry
standards," and that it is a "certified lead renovator."
Muhler expends great time, money, and effort to ensure
that it meets the standards of its advertising and complies
with industry standards when supplying and installing
replacement windows.

WWNC's advertisements were false or misleading
because, contrary to the literal meaning of its statements
that it adhered "to the strictest industry standards,"
WWNC installed windows in Charleston County and
neighboring areas without permits as required by law.
WWNC also advertised that it was "lead certified."
However, WWNC frequently neglected to notify
homeowners of lead-based paint concerns, neglected to
check or perform testing to determine if lead-based paint
was present, or failed to perform lead remediation when
installing replacement windows. These actions were done
to secure a competitive advantage and were against public
policy.

WWNC's failure to comply with the laws related to
obtaining permits for replacement windows and failure to
meet requirements with regard to lead-based paint
allowed WWNC to gain an unfair competitive advantage
in the market. WWNC was able to save significant
money, time, and effort by failing to meet these
requirements which allowed it to offer their products and
services at a substantially lower price. This advantage
then allowed WWNC to earn substantial revenues. It also
had the effect of adversely impacting Muhler's business
and its ability to compete in the market.

Muhler filed a complaint against WWNC in state court on
March 11, 2011. WWNC removed the case to federal
court on April 11, 2011. Muhler filed an amended
complaint asserting three causes of action against
WWNC: (1) false and misleading advertising violation of
the Lanham Act; (2) common law unfair competition; and
(3) violation of the South Carolina Unfair Trade Practices
Act ("SCUPTA"). WWNC initially appeared in the case
through counsel and defended the allegations in this case.

**\*2** On July 6, 2012, counsel for WWNC filed a motion to
withdraw as counsel. The court granted the request to be
relieved and gave WWNC time to secure new counsel. On
August 6, 2012, new counsel briefly made an appearance
on behalf of WWNC. Shortly thereafter, the attorney filed
a motion to withdraw as counsel, which the court granted
on September 5, 2013. The court's order allowed another

thirty days for counsel to appear on behalf of WWNC. No counsel made an appearance within that time. As a result of the failure of WWNC to secure counsel, WWNC's answer was stricken and WWNC placed in default on January 15, 2013.

On October 10, 2013, Muhler filed the instant motion for judgment and damages. The court held a damages hearing on November 12, 2013. WWNC was notified of both Muhler's motion and the damages hearing. Despite this notice, WWNC failed to appear at the hearing. The motion is now ripe for the court's review.

## II. STANDARDS

In determining whether to award a default judgment, the court will take as true the well-pleaded factual allegations in the complaint. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir.2001) ("Defendant, by his default, admits the plaintiff's wellpleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."(quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975))). The court must, therefore, determine whether the well-pleaded allegations in the plaintiff's complaint support the relief sought in this action. *Id.* "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c).

## III. DISCUSSION

The court will first consider Muhler's claims to determine whether they support the relief sought in this action. The court will then determine the appropriate amount of monetary relief to which Muhler is entitled.

### A. Findings of Fact and Conclusions of Law
The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1 125(a)(1)(B). To bring a false advertising claim under § 1125(a)(1)(B), a plaintiff must establish that:

(1) the defendant made a false or misleading description of fact or representation of fact in commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its product.

**\*3** *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 272 (4th Cir.2002).

SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.Code Ann. § 39–5–20(a); *see also Wright v. Craft,* 372 S.C. 1, 640 S.E.2d 486 (S.C.Ct.App.2006). To recover in an action brought pursuant to the SCUTPA, a plaintiff must establish the following three elements: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) a monetary or property loss as a result of the unfair or deceptive act(s). *Id.* "A trade practice is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive." *Young v. Century LincolnMercury, Inc.,* 302 S.C. 320, 396 S.E.2d 105, 108 (S.C.Ct.App.1989)*aff'd in part, rev'd in part on other grounds,* 302 S.C. 320, 396 S.E.2d 105 (S .C.1989)."Whether an act or practice is unfair or deceptive within the meaning of the UTPA depends on the surrounding facts and the impact of the transaction on the marketplace." *Wright,* 640 S.E.2d at 500. "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Id.* at 501 (internal citations omitted).

Muhler has established that WWNC was a licensee of Window World, Inc. Window World, Inc. is a national replacement window distributor. WWNC's website is linked to and accessed through the Window World, Inc. website. By following the instructions on the Window World, Inc. website, the customer is directed to use the

Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)

2014 WL 4269078

"store locator to locate a Window World dealer near you."WWNC's website included its contact information as Window World, Inc.'s representative in the Southeast region of South Carolina, including Berkeley, Charleston, Colleton, and Dorchester Counties. Muhler conducts its business in these same areas. Thus, according to the evidence presented, Muhler and WWNC are direct competitors. Additionally, WWNC placed its advertising campaign in interstate commerce since it was published through the internet.

The court finds that WWNC's failure to obtain permits or meet lead-based paint requirements forecloses any possibility that it complied with the "strictest industry standards." Further, WWNC's representation that it is "lead certified" and recommendation that consumers hire a "Window World certified professional" to check for lead-based paint because they are "certified risk assessors or inspectors, and can determine if your home has lead or lead hazards" implies that WWNC complies with all federal and state regulations associated replacing windows in homes with lead-based paint. However, the court finds these representations were false and capable of deceiving consumers. Muhler presented evidence showing that in over 1700 instances WWNC did not apply for or receive the required governmental permit for the installation. Evidence also showed that WWNC often charged the homeowner for the required permit fee and kept the funds without applying for or obtaining the required permit. Beginning in April 2010, federal law required that Muhler and WWNC, to the extent that their installations disturb lead-based paint in homes, businesses, and schools, be certified and follow specific work practices to prevent lead contamination. These laws and regulations only apply to buildings which were constructed before 1978. Evidence presented by Muhler showed that in at least 289 instances, WWNC neglected to notify homeowners of leadbased paint concerns, neglected to check or perform testing to determine if lead-based paint was present, or failed to perform lead remediation when installing replacement windows.

*4 WWNC's representations were material to consumers and likely to influence their purchasing decision. The representations at issue had a tendency to deceive a substantial segment of its audience. Furthermore, testimony presented at the hearing established that at least forty-four contracts procured by WWNC were likely diverted from Muhler's business. Therefore, WWNC's actions diverted sales from Muhler.

WWNC made a false and misleading representation of fact in commercial advertisement about its own product. Based on the number of times it failed to apply for a permit or satisfy lead-based paint requirements, WWNC's conduct established an unfair business practice. Its conduct affected the public interest because it was capable of repetition. WWNC's misrepresentations were material to the purchaser's decision to purchase. In the context of this case, the statement that WWNC adheres to the highest industry standards and representations with regard to lead-based paint are false as no industry standard could allow WWNC to ignore governmental permitting requirements and lead-based paint requirements.

Based on the foregoing, the court finds that Muhler's well-pleaded allegations and the uncontroverted evidence of this case establish WWNC's violation of both the Lanham Act and the South Carolina Unfair Trade Practices Act.[7]Therefore, Muhler is entitled to monetary relief.

## B. Monetary Relief[8]

Under the Lanham Act, a successful plaintiff may, "subject to the principles of equity, ... recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."15 U.S.C. § 1117(a). The court may, depending on the circumstances of the case, award damages up to three times actual damages. *Id.* However, the statute requires that any recovery of damages or profits in excess of actual damages must "constitute compensation and not a penalty."*Id.*"An enhancement is appropriate to compensate a Lanham Act plaintiff only for such adverse effects as can neither be dismissed as speculative nor precisely calculated.... Lost profits and market distortion are, however, appropriate bases for the catch-all enhancement contemplated by § 35(a)."*ALPO Petfoods, Inc. v. Ralston Purina Co.,* 997 F.2d 949, 955 (D.C.Cir.1993)."[T]he plaintiff's provable damages are the benchmark for determining whether an award constitutes compensation or whether it is a penalty."*Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1157 (7th Cir.1994). An enhancement of damages may be based on a finding of willful infringement, but cannot be punitive. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1127 (5th Cir.1991), *aff'd,*505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

Acknowledging that the Lanham Act "gives little guidance on the equitable principles to be applied by a court in making an award of damages," the Fourth Circuit has identified six non-exclusive factors for courts to consider when making a damages award:

> *5 (1) whether the defendant had
> the intent to confuse or deceive; (2)

Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)

2014 WL 4269078

whether sales were diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 174–75 (4th Cir.2006). The court will consider the six *Synergistic* factors before determining the amount Muhler is entitled to recover.

The first *Synergistic* factor—whether the defendant had the intent to confuse or deceive—"addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith."*Synergistic,* 470 F.3d at 175. "[A] lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award."*Synergistic,* 470 F.3d at 175. The evidence presented here—including more than 1700 installations for which WWNC failed to obtain a permit and at least 289 instances in which WWNC neglected to perform testing to determine if lead paint was present—makes it clear that WWNC willfully deceived consumers.

The second factor "involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities, and the extent to which the plaintiff had entered the market area where the infringement occurred."*Synergistic,* 470 F.3d at 175. Muhler has established that it competed in the same market as WWNC and that WWNC's actions diverted window sales and installations from Muhler. The wellpleaded facts were supplemented at the hearing by the testimony of Muhler's controller, William Boyd. According to Boyd, Muhler lost contracts worth at least $159,520.30 during the applicable time period as a result of WWNC's misrepresentations.

The third factor "addresses whether another remedy, such as an injunction, might more appropriately correct any injury the plaintiff suffered from the defendant's infringement activities."*Synergistic,* 470 F.3d at 176. "If an injunction is an adequate remedy, this factor should weigh against a damages award."*Id.* Injunctive relief is insufficient to compensate Muhler for the profit it lost from sales and installations of replacement windows diverted by WWNC. Moreover, it is likely that Muhler was harmed monetarily to an even greater extent that can be affirmatively demonstrated. Although Muhler can only point to 44 contracts that they lost to WWNC, there are

likely more consumers who chose WWNC over Muhler because of WWNC's unfair business practices.

The fourth factor "addresses the temporal issue of whether the plaintiff waited too long, after the infringement activities began, before seeking court relief."*Synergistic,* 470 F.3d at 176. "A substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief should weigh against an award of damages."*Id.* There is no evidence of any delay by Muhler in seeking relief. Upon learning of the acts complained of herein, Muhler sought counsel, who substantiated the factual underpinning of this litigation before ultimately filing suit.

*6 The fifth factor—the public interest in making the misconduct unprofitable—"addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty."*Synergistic,* 470 F.3d at 176. WWNC's false advertising misled its consumers in such a way as to expose them to complete loss of value for the services they contracted to receive. These actions also violated public policy. However, the court remains mindful that any damages award "should constitute compensation and not a penalty."15 U.S.C. § 1117(a).

The sixth and final factor—whether the situation involves a case of "palming off"—"involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products were really those of the plaintiff."*Synergistic,* 470 F.3d at 176. Palming off is not at issue in this case.

Based on a consideration of the *Synergistic* factors, the court finds that Muhler is entitled to a full recovery.

**1. Actual Damages**

Based on the evidence presented, the court finds that Muhler lost $159,520.30 in contracts because WWNC procured forty-four contracts with consumers for whom Muhler had sales leads. In an affidavit filed on April 2, 2014, Boyd testifies that Muhler's average profit margin on similar contracts is 52%. Boyd Aff. ¶ 6. This percentage accounts for costs associated directly with similar window replacement contracts and includes deductions for material, labor, permits, engineering, and inspection. *Id.* Therefore, the court finds that Muhler has suffered actual damages in the amount of $82,950.56.

Muhler argues that the court should treble these actual

Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)

2014 WL 4269078

damages pursuant to § 1117(a). Based on the *Synergistic* factors discussed above, as well as likelihood that Muhler lost additional contracts beyond the forty-four identified, the court finds that WWNC's multiple failures, omissions, and misrepresentations warrant the trebling of damages. The court thereby awards Muhler $248,851.67 in actual damages.

**2. Disgorgement of Profits**

In proving disgorgement of profits under the Lanham Act, "the plaintiff shall be required to prove the defendant's sales only; the defendant then must prove all elements of cost or deduction claimed."15 U.S.C. § 1117(a). Thus, the court considers WWNC's sales to be profit unless WWNC can prove "all elements of cost or deduction claimed."*Id.* In this case, WWNC was given notice of the hearing to determine damages but did not appear nor contest Muhler's damages claim. As a result, WWNC has offered no evidence of costs or challenged the revenue figures produced to this court.

At the hearing on damages, Muhler offered the testimony of expert report of Roy Strickland, a certified public accountant with the accounting firm Dixon Hughes Goodman. Strickland's opinion is that WWNC enjoyed gross revenue of $5,732,717.00 from the more than 1,700 jobs that were done without a permit. Based upon Strickland's conclusion, the court finds that Muhler has established to a reasonable degree of certainty that WWNC's gross revenues were $5,732,717.00. *See Hospitality Int'l v. Mahtani,* 1998 WL 35296447, at * 11 (M.D.N.C. Aug.3, 1998) ("Lanham Act damages may be awarded even when they are not susceptible to precise calculations; Where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation."(quoting *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1565 (11th Cir.1986)).

*7 After Muhler has satisfied its burden of proving WWNC's gross sales, the burden of proof shifts to WWNC "to prove all elements of costs or deductions claimed."15 U.S.C. § 1117(a). First, WWNC must prove that the type of cost or deduction is allowed to be deducted from WWNC's sales under the Lanham Act.*Hospitality Int'l,* 1998 WL 35296447, at *22 (citing *Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 586–87 (2d Cir.1980)). Second, WWNC must prove the amount of the allowable costs or deductions." *Id.* (citing 15 U.S.C. § 1117(a))."Courts have repeatedly disallowed the deduction of costs which the defendant is unable to

prove to be directly attributable to the sale of the infringing goods or services."*Id.* at 27.WWNC has failed to appear or defend this litigation. Despite being given time to secure new counsel and being provided notice of the damages hearing, WWNC has provided no evidence to establish any costs or deductions from gross revenues.

Muhler asks the court for disgorgement of WWNC's profits in the amount of $5,732,717.00. Such a recovery, which does not take into account WWNC's profit margin, would almost certainly penalize WWNC instead of compensating Muhler. Instead, the court assumes that WWNC's profit margin on window installations is similar to Muhler's. Using a 50% profit margin, WWNC's profit from the 1,700 jobs done without a permit would be $2,866,358.50. The court determines that that amount is a reasonable approximation of Muhler's lost profits because of WWNC's unlawful conduct. Therefore, Muhler is entitled to $2,866,358.50 of WWNC's profits, and such amount is "just, according to the circumstances of the case."15 U.S.C. § 1117(a).

**3. Attorneys' Fees**

In "exceptional cases" involving violations of the Lanham Act, reasonable attorneys' fees may be recovered by the prevailing party. 15 U.S.C. § 1117(a)."Under 15 U.S.C. § 1117(a), a case is 'exceptional' if the defendant's conduct was malicious, fraudulent, willful or deliberate in nature."*People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 370 (4th Cir.2001) (internal quotations omitted). The Fourth Circuit has held that "for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith."*Scotch Whisky Ass'n v. Majestic Distilling Co.,* 958 F.2d 594, 599 (4th Cir.1992). Once the court has determined that a case is "exceptional," the decision to award fees is a matter within the court's discretion. *See Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1480 (Fed.Cir.1998); *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.,* 994 F.Supp. 350, 381 (W.D.N.C.1997).

As discussed above, based on the evidence presented by Muhler—including more than 1700 installations for which WWNC failed to obtain a permit and at least 289 instances in which WWNC neglected to perform testing to determine if lead paint was present—the court finds that WWNC willfully and deliberately deceived consumers and undertook its actions in bad faith and, therefore, that this is an exceptional case warranting the imposition of attorneys' fees.

*8 Having found that this is an exceptional case, the court must turn to the reasonableness of Muhler's request for

Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)

2014 WL 4269078

attorneys' fees. Muhler has requested $127,348.00 in attorneys' fees. In calculating an award of attorneys' fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended."*Grissom v. Mills Corp.,* 549 F.3d 313, 320–21 (4th Cir.2008). To determine the reasonable number of hours and reasonable rate to use in calculating the lodestar, the court is guided by twelve non-exclusive factors, often known as the *Barber* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.,* 549 F.3d 313, 321 (4th Cir.2008) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1402 n. 18 (4th Cir.1987)). As the Fourth Circuit has noted, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."*Doe v. Chao,* 435 F.3d 492, 506 (4th Cir.2006) (quoting *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Although courts should consider all of the *Barber* factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable. *See EEOC v. Serv. News, Co.,* 898 F.2d 958, 965 (4th Cir.1990).

The court has considered all the *Barber* factors, and considers the following factors particularly applicable to the current case.

**a. Time and Labor Expended**

Counsel for Muhler spent over 1,100 hours litigating this matter. This includes handling the case, which has been pending for over three years, from pre-suit due diligence to trial preparation, even though the action eventually ended with a default judgment. As indicated in the billing records for Muhler's counsel, discovery was extensive in this case. In particular, counsel spent a significant amount of time determining the scope and extent of WWNC's business practices. This required analyzing voluminous Freedom of Information Act responses from dozens of municipal and county officials in order to juxtapose those responses with WWNC's sales contracts over a three year period. Counsel also compared WWNC's sales contracts to determine which of those contracts Muhler had sales leads for. Additionally, there were a number of motions filed and WWNC made a number of objections to Muhler's discovery requests, both of which added to the time and labor required.

**b. Novelty and Difficulty of Questions/Skill Required**

*9 Another court in this district has noted that claims involving the Lanham Act and unfair competition "are generally recognized as complex areas of the law."*Firehouse Rest. Grp., Inc. v. Scurmont LLC,* No. 4:09–cv–00618, 2011 WL 4943889, at *14 (D.S.C. Oct.17, 2011). Muhler pursued four causes of action that were governed by both federal and state law. These claims required Muhler to establish, among other things, that WWNC made a false or material misrepresentation of fact in in a commercial advertisement that has a tendency to deceive a substantial segment of its audience. Moreover, the scope of WWNC's business practices were not obvious at the outset of the case. As noted above, counsel for Muhler had to extensively investigate public records and WWNC's records, which added to the both the complexity of the case and the skill required to handle it.

**c. Amount in Controversy and Amount Obtained**

The amount in controversy here is high—Muhler sought over $5 million in damages in this case—and the court has awarded Muhler over $3 million in damages and disgorgement of profits.

**d. Awards in Similar Cases**

Given the complexity of the legal issues common to Lanham Act claims, attorneys' fees awards are often substantial, especially in cases that have gone to trial. *See Firehouse Rest. Grp.,* 2011 WL 4943889, at *17

Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)

2014 WL 4269078

(awarding $241,888 in attorneys' fees following a jury trial); *All Am. Title Loans, Inc. v. Title Cash of S. Carolina, Inc.,* No. 3:05–cv–1280, 2007 WL 1464580 (D.S.C. May 17, 2007) (awarding attorneys' fees of $150,869 following trial). Courts in this circuit have often awarded less for attorneys' fees when the case has resulted in a default judgment. *See Herbert Richter MetallwarenApparatebau GmbH & Co., KG v. GIB Servs., LLC,* 2011 WL 2516692 (E.D.Va. June 23, 2011) (awarding $13,309 in fees); *Trailways Transp. Sys., Inc. v. Lion Corp.,* 2011 WL 2293883 (E.D.Va. June 9, 2011) (awarding $54,052.50 in fees). However, in both *Herbert Richter* and *Trailways Transport,* default judgment was entered very early in the case. In this case, default judgment was not entered until nearly two years after the suit was filed and shortly before the deadline for jury selection. Considering the late entry of default and the extensive discovery required by Muhler's counsel, the court does not considers Muhler's request for attorneys' fees to be consistent with awards in similar cases.

After careful consideration of the *Barber* factors, the court turns to the reasonableness of the hours spent working on the case. Muhler's counsel have provided the court a detailed report of the hours they have billed for this case. The court has reviewed these billing records and finds that they are generally meticulous, fair, and reasonable. The court notes, however, that several of the legal assistants' time entries reflect tasks clerical in nature, such as creating notebooks or files and updating attorneys' calendars. Accordingly, the court will reduce the time entries submitted for the legal assistants by twenty-five percent to account for these clerical tasks. *See Alexander S. v. Boyd,* No. 3:90–cv–3062, 929 F.Supp. 925, 939 (D.S.C.1995) (applying a percentage reduction for work performed by project assistants that was secretarial in nature); *U.S. ex rel. Abbott–Burdick v. Univ. Med. Assocs.,* No. 2:96–cv–1676–12, 2002 WL 34236885, at * 18 (D.S.C. May 23, 2002) (applying a percentage reduction for clerical work performed by paralegals and collecting cases).

**\*10** The analysis turns next to the reasonableness of Muhler's counsel's hourly rates. In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community."*Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994) (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The relevant community for determining the prevailing market rate is generally the community in which the court where the action is prosecuted sits. *Id.* The Fourth Circuit has recognized that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of

the prevailing market rates in the relevant community for the type of work for which he seeks an award."*Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) (citations and internal quotation marks omitted). Typically, a party seeking attorneys' fees would present an affidavit from a local counsel not connected to the present litigation who would offer testimony concerning prevailing local rates for the relevant type of work. *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 245 (4th Cir.2009) (citing affidavits of other local lawyers as specific evidence "sufficient to verify the prevailing market rates").

According to D. Jay Davis, Jr., a partner at Young Clement Rivers, LLP, who represented Muhler in this matter, the hourly billing rates charged in litigating this case were: $220 per hour for partners and special counsel; $185 per hour for associates; and $40 per hour for paralegals.[5]Davis Aff. ¶ 5. Next, Muhler has presented the Court with an expert affidavit of attorney Wade H. Logan, III, a lawyer unconnected to this case who has practiced law in South Carolina for 43 years, which substantiates that the hourly rates charged by Muhler's counsel and staff are reasonable and commensurate with the prevailing market rates in Charleston for the type of work done. Logan Aff. ¶¶ 10–11. Based on the court's own knowledge of hourly rates in this district, the evidence submitted by Muhler, and billing rates in similar cases, the court finds that the hourly rates documented by Davis and reflected in the billing records are the prevailing market rates for this type of case in the District of South Carolina.

Based on the above, the court finds that the lodestar amount for Muhler's counsel is $118,600.00, which the court determines to be reasonable in this case. Therefore, the court awards $118,600.00 for attorneys' fees.

### 4. Costs

A plaintiff that has established a violation of the Lanham Act "shall be entitled, ... subject to the principles of equity, to recover ... the costs of the action. 15 U.S.C. § 1117(a). The award of "costs under the Lanham Act is committed to the sound discretion of the Court, based on the equities of each particular case."*PETA,* 263 F.3d at 371 (citation omitted). Muhler requests $9,768.96 in costs and has provided documentation for costs related to computer research, copying, long distance calls, and court fees.

**\*11** This court joins several other courts in this circuit in disallowing recovery for the cost of computer research. *See Firehouse,* 2011 WL 4943889, at \*18 (collecting cases). The court determines that the remaining costs are

**Muhler Co., Inc. v. Window World of N. Charleston LLC, Slip Copy (2014)**

2014 WL 4269078

reasonable based on the equities of the case, and therefore awards Muhler $7,506.09 for costs.

### IV. CONCLUSION

Based on the foregoing, the court **GRANTS** plaintiff's motion for default judgment and **AWARDS** Muhler

monetary relief against Window World of North Charleston in the following amounts: $248,851.67 for actual damages, $2,866,358.50 for disgorgement of profits, $118,600.00 for attorneys' fees, and $7,506.09 for costs.

### AND IT IS SO ORDERED.

Footnotes

1       WWNC is also liable under Muhler's cause of action for common law unfair trade practice, as that cause of action shares common elements with the Lanham Act. *See Shakespeare Co. v. Silstar Corp. of Am., Inc.,* 802 F.Supp. 1386, 1399 (D.S.C.1992) (noting that the elements of common law unfair competition under South Carolina law are identical to proving a Lanham Act Claim) *rev'd on other grounds,*9 F.3d 1091 (4th Cir.1993)

2       It has been noted that "[t]here is a great deal of semantic confusion in [decisions] dealing with ... monetary recovery for trademark infringement and unfair competition."5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.57 (4th ed.2009). Courts have used "at least five ways of measuring monetary recovery."*Id.* Some courts refer to all forms of monetary relief as "damages," but Professor McCarthy believes that this "only serves to promote confusion" in an already confused area of the law. *Id.* Because Muhler seeks (1) actual damages, (2) WWNC's profits, (3) attorneys' fees, and (4) costs, the court will refer generally to "monetary relief" and will distinguish the types of relief as needed.

3       Upon review of the billing records submitted to the court, it appears that the hourly billing rate charged for legal assistants was $80.

---

**End of Document**                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Case 5.


*Grayson Consulting, Inc. v. Cathcart*, 2013 WL 436217

Grayson Consulting, Inc. v. Cathcart, Not Reported in F.Supp.2d (2013)

2013 WL 436217

2013 WL 436217
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Charleston Division.

GRAYSON CONSULTING, INC., Plaintiff,
v.
Charles CATHCART, et al., Defendants.

No. 2:07–02992–DCN. | Feb. 5, 2013.

**Attorneys and Law Firms**

Alisa Joy Roberts, Falls Church, VA, Charles Pelot Summerall, IV, Womble, Carlyle, Sandridge and Rice, Charleston, SC, James S. Byrd, Jr., Byrd and Byrd, Tucker Harrison Byrd, Morgan and Morgan, Orlando, FL, for Plaintiff.

Evelyn Cathcart, Tuxedo Park, NY, Coming Ball Gibbs, Jr., Gibbs and Holmes, Francis Lejau Parker Barnwell, Frank Barnwell Law Office, James Kevin Holmes, Steinberg Law Firm, Brian C. Duffy, J. Rutledge Young, III, Seth Warren Whitaker, Duffy and Young, George J. Kefalos, George J. Kefalos Law Office, Charleston, SC, Steven Soulios, New York, NY, For Defendants.

David Kekich, Newport Beach, CA, pro se.

**ORDER**

DAVID C. NORTON, District Judge.

**\*1** This matter is before the court on plaintiff Grayson Consulting, Inc.'s ("Grayson")[1] petition for attorneys' fees and costs related to Grayson's successful Motion for Sanctions for Clifford Lloyd's Discovery Abuses. For the reasons that follow, the court awards Grayson attorneys' fees in the amount of $11,360.00.

**I. BACKGROUND**

On May 7, 2012, Grayson served its first set of interrogatories and first set of requests for production of documents on defendant Clifford Lloyd ("Lloyd"). Lloyd's responses were due on June 7, 2012. Lloyd did

not respond to these discovery requests and, on August 15, 2012, Grayson filed a motion to compel with the court. The court referred the matter to Magistrate Judge Bruce Howe Hendricks on August 16, 2012. Lloyd did not respond to the motion to compel and, on September 7, 2012, Judge Hendricks granted the motion. Judge Hendricks ordered that "Defendant Lloyd shall fully respond to [Plaintiff's] First Set of Interrogatories to Clifford Lloyd and Plaintiff's First Set of Requests for Production to Clifford Lloyd within FIFTEEN (15) days of the date of this Order."Text Order, Sept. 7, 2012, ECF No. 515. Lloyd failed to comply with Judge Hendricks' order. Grayson's counsel sent two follow-up letters to Lloyd's counsel and, on October 5, 2012, filed a motion for an order to show cause relating to Lloyd's failure to respond to the outstanding discovery requests. This court set a date of October 26, 2012 for a hearing on the motion for order to show cause. Lloyd sought, and Grayson agreed, to several extensions of time to respond to the motion for order to show cause. Lloyd never responded to the motion for order to show cause.

On December 10, 2012, Grayson filed a motion for sanctions based on Lloyd's failure to respond to discovery requests. On December 28, 2012, Lloyd responded to the motion, attaching copies of his cursory discovery responses to his filing. Lloyd's response to the requests for production is dated December 18, 2012; his responses to Grayson's first and second sets of interrogatories are dated December 26, 2012.

At a hearing held on January 3, 2013, this court granted Grayson's motion for sanctions. The court further directed Grayson's counsel to submit "a statement of reasonable attorneys' fees and costs ... [that includes] entries for all the work done in preparation, filing, and arguing of the motions for order to show cause and for sanctions, as well as other costs incurred by counsel to obtain discovery from Mr. Lloyd after September 7, 2012, the date of Judge Hendricks ['] text order compelling discovery." Minute Entry, Jan. 3, 2013, ECF No. 572.

**II. STANDARDS**

Rule 37(a) (5)(A) of the Federal Rules of Civil Procedure provides that,

> If [a] motion [to compel discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the

2013 WL 436217

court must ... require the party whose conduct necessitated the motion, or the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

**\*2** Furthermore, Rule 37(b)(2) provides that courts "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey a court order to provide discovery. Fed.R.Civ.P. 37(b)(2)(C). A district court's imposition of sanctions is subject to an abuse of discretion standard upon appellate review.

### III. DISCUSSION

Grayson seeks an award in the amount of $14,259.09. This award comprises $1,739.50 for work done by attorney Bryson Geer at the law firm Nelson Mullins Riley & Scarborough LLP; $1,188.00 for work done by attorney Charles Sum merall at the law firm Womble Carlyle Sandridge & Rice LLP; $200.00 for work done by paralegal Carol Casey at Womble Carlyle; $10,890.10 for work done by attorney Alisa Roberts at Grayson Law Center, P.C.; and $241.49 for *pro rata* travel expenses for Ms. Roberts' appearance at the January 3, 2013 hearing. In all, Grayson claims that the legal professionals listed above spent 38.8 hours trying to obtain discovery from Lloyd after Judge Hendricks ordered the discovery be produced. The claimed time includes the preparation of the motions for order to show cause and for sanctions; formal and informal communications with Lloyd's counsel; and preparation for and appearance at the January 3, 2013 hearing. Lloyd counters that this request is excessive and suggests that an award of no more than $3,839.00 would be appropriate.

As an initial matter, the court finds it inappropriate to award travel costs, *pro rata* or otherwise, as part of the instant fee petition. *See, e.g., Braunberger v. Interstate Eng'g, Inc.,* 607 N.W.2d 904, 910–11 (N.D.2000) ("A prevailing party attorney's expenses incurred during trips to court cannot be taxed as costs. Attorney travel and meal expenses are normally reimbursed by the client and not assessed as disbursements.") (collecting cases).

In determining the reasonable amount of attorneys' fees to be awarded to Grayson, the court must consider the following factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fees awarded in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978); *see also CT & T EV Sales, Inc. v. 2AM Group, Inc.,* Docket No. 11–cv–1532, 2012 WL 3010911, at * 1 (D.S.C. July 13, 2012). The court need not rigidly apply these factors, as they may not all affect the fee award in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee."*EEOC v. Servo News Co.,* 898 F.2d 958, 965 (4th Cir.1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community."*Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994) (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

**\*3 1. Time and Labor Expended.**This case has been actively litigated since August 2007. Lloyd failed to respond to Grayson's first discovery requests for more than seven months. Much of the time Grayson's attorneys expended in this matter resulted from Lloyd's lackadaisical attitude to the Federal Rules of Civil Procedure and to court orders. Indeed, Lloyd (who is a lawyer) failed to comply with Judge Hendricks' order until after Grayson's counsel followed up numerous times and filed two additional, related motions.

Lloyd argues that Grayson's lead counsel and local counsel improperly doublebilled for time spent preparing

Grayson Consulting, Inc. v. Cathcart, Not Reported in F.Supp.2d (2013)

2013 WL 436217

the motions and appearing at the hearing. This argument is unavailing. The rules of this court require local counsel to sign all documents filed and to appear at all hearings. Local Civil Rules 83.I.04, 83.I.06 DSC. The collaborative efforts between Grayson's attorneys is both appropriate and dictated by the local rules. This factor favors an award for all 38.8 hours of legal work requested by Grayson.

**2. Novelty & Difficulty of Questions Raised.**This factor does not significantly affect the instant petition for attorneys' fees. The primary subject matter of this litigation is exceedingly complex, as evidenced by the length of time for which this litigation has been ongoing. Nevertheless, the matter underlying this fee petition—Lloyd's delay in producing discovery responses—is neither particularly novel nor difficult.

**3. Skill Required.**Given the lengthy and complex nature of this litigation, the court finds that Grayson has justifiably engaged knowledgeable, competent counsel to prosecute its claims against the myriad defendants involved. Because lead counsel is not licensed in South Carolina, it was necessary for Grayson to procure equally skilled local counsel.

**4. Preclusion of Other Employment Opportunities.**"This factor typically applies in circumstances where counsel was required to forgo some measure of compensation because of the time devoted to a case."*Uhlig, LLC v. Shirley,* —— F.Supp.2d ——, 2012 WL 4478365, at *8 (D.S.C. Sept.25, 2012) (citing *Daly v. Hill,* 790 F.2d 1071, 1082 n. 15 (4th Cir.1986) (noting that the effect of pursuing a civil rights action may require an adjustment of the hourly attorney fee rate in order to fully compensate an attorney for his or her lost opportunities to pursue other, more lucrative work)). The court finds that this factor is not significant to the calculation of the instant fee award.

**5.** *Customary Fee for Like Work.*Grayson seeks attorneys' fees for Ms. Geer, Mr. Summerall, Ms. Roberts, and Ms. Casey at the rates of $355 per hour, $360 per hour, $374–383 per hour, and $125 per hour, respectively. Ms. Casey's rate of $125 per hour accurately reflects for her valuable work as a paralegal. *See Uhlig, LLC,* 2012 WL 4478365, at *8 (approving rate of $150 per hour for work done by paralegals at a law firm of similar size and national presence). However, other courts in this district have found that slightly lower hourly rates are more appropriate for work done by senior attorneys. *Atkinson v. House of Raeford Farms, Inc.,* Docket Nos. 09–cv–1901, 09–cv3137, 2012 WL 2923246, at *3 (D.S.C. July 18, 2012) (awarding attorneys' fees at a rate of $300/hour for

law partners); *2AM Group,* 2012 WL 3010911, at *4 (same). For this reason, the court reduces the hourly rates for Ms. Geer, Mr. Summerall, and Ms. Roberts to $300 per hour.[2]

**\*4 6. The Attorney's Expectations at the Outset of Litigation.**This factor does not affect the calculation of the attorneys' fee award.

**7. The Time Limitations Imposed by the Client or Circumstances.**This is not a significant factor for the calculation of the fee award.

**8. The Amount in Controversy and the Results Obtained.**While millions of dollars are at issue in this case, no judgment has been entered against Mr. Lloyd. This factor, therefore, does not affect the calculation of the instant attorneys' fees.

**9. The Experience, Reputation and Ability of the Attorneys.**As noted elsewhere, all of the legal professionals for whose work Grayson seeks compensation are well-regarded and highly-skilled.

**10. The Undesirability of the Case within the Legal Community.**This is not a significant factor with respect to the instant fee petition.

**11. The Nature and Length of the Professional Relationship between Attorney and Client.**Ms. Geer has represented Chapter 7 trustee Kevin Campbell in this and related cases since at least August 31, 2007, when the complaint was filed in this case. Mr. Summerall has represented Grayson in this and related cases since at least February 28, 2007, when the complaint was filed in *Grayson v. Cathcart,* Docket No. 07–cv–0593, a case that has been consolidated with the instant case. Ms. Roberts has represented Grayson in this and related cases since at least July 6, 2007, when she moved to appear *pro hac vice* in *Grayson v. Cathcart.*

**12. Attorney Fees Awarded in Similar Cases.**As noted above, the legal professionals' hourly rates, as adjusted by the court, are in keeping with the hourly rates recently determined by other courts in this district for similarly sophisticated legal work.

### III. CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** Grayson's petition for attorneys' fees. Grayson is entitled to attorneys' fees in the amount of $11,360.00. This

Grayson Consulting, Inc. v. Cathcart, Not Reported in F.Supp.2d (2013)

2013 WL 436217

award is based upon 4.9 hours of work done by attorney Bryson Geer at the rate of $300 per hour; 3.3 hours of work done by attorney Charles Summerall at the rate of $300 per hour; 1.6 hours of work done by paralegal Carol Casey at the rate of $125 per hour; and 29.0 hours of work done by attorney Alisa Roberts at the rate of $300 per hour. A table detailing the fees awarded is attached to this order as Exhibit A. The fee petition submitted by

Grayson is attached as Exhibit B. Lloyd's objections to the fee petition and Grayson's response thereto are attached as Exhibits C and D.

**AND IT IS SO ORDERED.**

Footnotes

[1]     Grayson was substituted for the original plaintiff in this case, Chapter 7 trustee Kevin Campbell, on November 7, 2012. The term "Grayson" also includes Campbell, the original plaintiff. Similarly, the term "Grayson's counsel" also includes Campbell's counsel.

[2]     The court notes that Ms. Geer is a partner at Nelson Mullins with more than fifteen years of legal experience and Mr. Summerall is a partner at Womble Carlyle with more than twenty-five years of legal experience. The court is unaware whether Ms. Roberts is a partner with Grayson Law Center; however, she has at least eight years of legal experience. Furthermore, her legal skills and her depth of knowledge—particularly as they relate to this case—justify awarding her attorneys' fees at the hourly rate of $300.

---

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

# Case 6.

*Froggy's Carwash LLC v. Jim Coleman Co.*, 2012 WL 1936999

Froggy's Car Wash, LLC v. Jim Coleman Co., Not Reported in F.Supp.2d (2012)

2012 WL 1936999

2012 WL 1936999
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Charleston Division.

FROGGY'S CAR WASH, LLC d/b/a Froggy's ICE
Company, Froggy's Express ICE & Water, LLC
d/b/a Froggy's ICE Company, and Ralph E.
Massenburg, Jr., Plaintiffs,
v.
JIM COLEMAN COMPANY and Russell Coleman,
Defendants.

Civil No. 2:11–CV–798. | May 29, 2012.

**Attorneys and Law Firms**

William A. Scott, Pedersen and Scott, Charleston, SC, for
Plaintiffs.

Robert Bratton Varnado, Brown and Varnado, Mt.
Pleasant, SC, for Defendants.

**ORDER**

DAVID C. NORTON, District Judge.

**\*1** This matter is before the court on plaintiffs' motion for
attorneys' fees, costs, and prejudgment interest. For the
following reasons, the court grants plaintiffs' motion.[1]

**I. BACKGROUND**

Plaintiffs brought the instant law suit against defendants
for breach of contract, negligent misrepresentation, fraud,
and fraud in the inducement after defendants failed to pay
monthly installments within the requisite time period
prescribed by a settlement agreement between the parties.
This court orally granted plaintiffs' motion for partial
summary judgment for the breach of contract claim on
January 17, 2012, and plaintiffs dropped their remaining
claims. Plaintiffs now seek attorneys' fees, costs, and
prejudgment interest pursuant to the language of the
settlement agreement, which states, "If either party is
required to apply to the Court for enforcement of this
Agreement, the prevailing party is entitled to recovery of

its reasonable attorneys' fees and costs associated
therewith."

**II. DISCUSSION**

In diversity cases, the right to attorneys' fees is controlled
by state law, *Ranger Cons.Co. v. Prince William Cnty.
Sch. Bd.,* 605 F.2d 1298, 1301 (4th Cir.1979), as is the
method for determining the amount. *Roger E. Herst
Revocable Trust v. Blinds to Go Inc.,* No. 10–3226, 2011
WL 6444980, at \*1 (D.Md. Dec.20, 2011); *Sauders v.
S.C. Pub. Serv. Auth.,* No. 93–3077, 2011 WL 1236163,
at \*1 (D.S.C. Mar. 30, 2011). South Carolina courts apply
the "lodestar" analysis for determining an award of
"reasonable" attorneys' fees required by statute or
contract. *Layman v. State,* 376 S.C. 434, 658 S.E.2d 320,
332 (S.C.2008).

> In determining the reasonable time
> expended and a reasonable hourly
> rate for purposes of calculating
> attorneys' fees, South Carolina
> courts have historically relied on
> six common law factors of
> reasonableness: (1) the nature,
> extent, and difficulty of the case;
> (2) the time necessarily devoted to
> the case; (3) the professional
> standing of counsel; (4) the
> contingency of compensation; (5)
> the beneficial results obtained; and
> (6) the customary legal fees for
> similar services.

*Id.* at 333;*see also Jackson v. Speed,* 326 S.C. 289, 486
S.E.2d 750, 760 (S.C.1997).

Plaintiffs properly filed this case to remedy breach of a
settlement agreement. *See Sadighi v. Daghighfekr,* 66
F.Supp.2d 752 (D.S.C.1999). Because plaintiffs were
forced to apply to this court for enforcement of the
agreement, according to the terms of the contract,
attorneys' fees and costs are required.

The court has considered the attorneys' receipt of hours,
professional standing, fee arrangement, affidavit, and the
procedural history of the case. Plaintiffs' attorneys billed
by the hour at the rate of $150.00 for an associate,
$100.00 for a paralegal, and $250.00 for the lead partner,
who is the head of the Charleston Office of Rogers,

Townsend and Thomas, PC. While the amount of hours, 37.9, would have called for $7,230.00 in attorneys' fees based on the billable hour rates, plaintiffs request only $4,698.00. This case was straightforward, plaintiffs did not engage in unnecessary discovery or depositions, and plaintiffs' billing records demonstrate that the attorneys spent a reasonable amount of time on necessary tasks. Based on the foregoing, plaintiffs' request for $4,698.00 in attorneys' fees is granted.

**\*2** In addition to attorneys' fees, the settlement agreement provides that a party who seeks enforcement of the contract and prevails may also recover costs. Plaintiffs claim $350.00 in filing fees, and defendants have not specifically objected to this reasonable request. Finally, "[i]n South Carolina, the law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, payment is demandable, if the sum due is certain or capable of

being reduced to a certainty," pursuant to S.C.Code Ann. § 34–31–20(A).*GTR Rental, LLC v. DalCanton,* 547 F.Supp.2d 510, 524 (D.S.C.3008). According to the settlement agreement, defendants were responsible for monthly installments starting November 2010, therefore, prejudgment interest of $4,203.51 is appropriate.

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiffs' motion and awards plaintiffs $4,698.00 in attorneys' fees, $350.00 in cost, and $4,203.51 in prejudgment interest.

**AND IT IS SO ORDERED.**

Footnotes

1     The parties agree this award should not be made against Russell Coleman in his individual capacity.

---

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Case 7.

*Gregg v. Ham*, 2010 WL 5060583

Gregg v. Ham, Not Reported in F.Supp.2d (2010)

2010 WL 5060583

2010 WL 5060583
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Columbia Division.

Shirley GREGG, Plaintiff,
v.
Jon E. HAM, Quicksilver Bail Bonds, LLC,
Defendants.

C/A No. 3:08–4040–CMC. | Dec. 6, 2010.

**Attorneys and Law Firms**

Paul M. Fata, Stuckey Fata and Segars, Bishopville, SC,
William E. Hopkins, Jr., Hopkins and Campbell,
Columbia, SC, for Plaintiff.

Henry S. Duffee, Jr., Strobel Law Firm, Florence, SC,
Richard Wayne Strobel, Richard Strobel Law Office,
Florence, SC, Henry S. Duffee, Jr., Strobel Law Firm,
Florence, SC, for Defendants.

**OPINION and ORDER**

CAMERON McGOWAN CURRIE, District Judge.

**\*1** This matter is before the court on Plaintiff's post-trial
motion for attorney's fees. Defendants have responded in
opposition. For the reasons stated below, the court grants
in part Plaintiff's motion and awards $20,000.00 in
attorney's fees and $2,582.18 in costs.

**A. BACKGROUND**
On December 18, 2008, Defendants joined in the removal
of this matter to this court from the Sumter County Court
of Common Pleas. Plaintiff alleged in her Complaint that
Defendants violated her Fourth Amendment right to be
free from an unreasonable search of her residence, and
also asserted state law claims for assault, trespass and
intentional infliction of emotional distress.[1]Plaintiff
sought actual and punitive damages as to all causes of
action.[2]

This matter was tried before a jury. At the close of
Plaintiff's case, the court directed a verdict for
Defendants on her claim of intentional infliction of

emotional distress. The remaining claims were considered
by the jury which, after due deliberations, found for
Plaintiff on all claims. On February 25, 2010, the Clerk
entered judgment in favor of Plaintiff. An appeal is
currently pending in this matter.

**B. STANDARD**
Congress has authorized the award of a reasonable
attorney's fee to prevailing parties in certain civil rights
actions. 42 U.S.C. § 1988(b) ("[T]he court, in its
discretion, may allow the prevailing party ... a reasonable
attorney's fee as part of the costs ....")."[A] plaintiff
'prevails' when actual relief on the merits of [her] claim
materially alters the legal relationship between the parties
by modifying the defendant's behavior in a way that
directly benefits the plaintiff."*Mercer v. Duke Univ.,* 401
F.3d 199, 203 (4th Cir.2005) (quoting *Farrar v. Hobby,*
506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494
(1992)). The district court has the discretion to determine
the reasonableness of an attorney fee request. *See, e.g .,
Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct.
1933, 76 L.Ed.2d 40 (1983). Nonetheless, "a prevailing [§
1983] plaintiff should ordinarily recover an attorney's fee
unless special circumstances would render such an award
unjust."*Id.* at 429 (internal quotation marks and citation
omitted).[3]

In addressing a motion for attorney's fees, the "court must
first determine the lodestar figure by multiplying the
number of reasonable hours expended times a reasonable
rate."*Robinson v. Equifax Information Servs., LLC,* 560
F.3d 235, 243 (4th Cir.2009) (citing *Grissom v. The Mills
Corp.,* 549 F.3d 313, 310 (4th Cir.2008)). In determining
what constitutes a "reasonable" number of hours and
billing rates, courts apply the factors adopted in *Barber v.
Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th
Cir.1978).[4]*Id.* at 245 (reaffirming use of the *Barber*
factors)."[T]here is a 'strong presumption' that the
lodestar figure is reasonable."*Perdue v. Kenny A.,* 559
U.S. ——, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494
(2010). Even with this presumption, "[i]t is essential that
the judge provide a reasonably specific explanation for all
aspects of a fee determination ...."*Id.* at 1676.

**\*2** When calculating reasonable fees, establishing the
hourly rate is generally the critical inquiry. *Westmoreland
Coal Co. v. Cox,* 602 F.3d 276, 289 (4th Cir.2010)
(citation and quotations omitted)). The fee applicant bears
the burden of establishing the reasonableness of the
requested rate. *Id.*

Gregg v. Ham, Not Reported in F.Supp.2d (2010)

2010 WL 5060583

In addition to the attorney's own affidavit, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a "market rate" in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the court should consider evidence of what attorneys earn for performing similar services in similar circumstances, "which, of course, may include evidence of what the plaintiff's attorney actually charged his client."*Westmoreland Coal Co.,* 602 F.3d at 289. (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.,* 489 F.3d 615, 622 (4th Cir.2007)). Examples of specific evidence that courts have found "sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community."*Id.* (quoting *Robinson,* 560 F.3 d at 245).

## C. DISCUSSION

Plaintiff seeks attorney's fees of "not less than" $ 40,000, costs, and an award of expert witness fees in the amount of $2,632.00. Mem. Supp. at 7 (Dkt. # 119–1, filed Mar. 8, 2010). Counsel for Plaintiff, William E. Hopkins, Jr. (Hopkins) provides an affidavit in support of the motion, indicating that his normal billing rate is $300 per hour; that the case was taken on a contingency basis with no guarantee of collecting any fee; and that Section 1983 cases are difficult to win, particularly as the "Fourth Circuit Court of Appeals makes the plaintiff's burden heavier in these types of cases."Aff. of William E. Hopkins, Jr., at ¶ 6 (Dkt. # 119–5, filed Mar. 8, 2010). Together with his affidavit, Hopkins attached itemized billing records relating to this matter. Dkt. Nos. 119–2, 119–3.In response to this court's Order of July 14, 2010, Hopkins submitted an affidavit of attorney J. Preston Strom, Jr. (Strom), which addressed the *Barber* factors, including the issue of prevailing market rate.

As noted above, Defendants argue in a short reply that an award of $40,000 is unreasonable based upon the relationship of Plaintiff's recovery on her § 1983 claim to her state law claims, urging that "such a result is not permitted under § 1988."Resp. at 2 (Dkt. # 129, filed July 12, 2010). Additionally, Defendants argue that if the court is inclined to award attorney's fees, an award of $10,000 is reasonable, as such an award would reflect one-third of the jury's award on the § 1983 claim ($30,001.00).

## 1. EVALUATION OF BARBER FACTORS

**\*3** The court has evaluated all of the *Barber* factors but finds that the factors below warrant discussion here.

*Time and Labor Expended.*Hopkins has submitted a detailed accounting of time that he, co-counsel Paul Fata (Fata), an associate, and a paralegal spent on this case. In reviewing these records, the court finds the time spent reviewing, analyzing, researching, and drafting a response to the motion for summary judgment filed by Defendants Sumter County Sheriff's Department and Senior Deputy Justin Yelton should be excluded. Some of the research and review of the issues involved in these Defendants' summary judgment motion undoubtedly overlapped with and informed issues presented at trial. However, to provide compensation for this time spent responding to a motion filed by Defendants with whom Plaintiff settled would produce a windfall to counsel. Accordingly, the court reduces counsel's requested time by the time for preparation and filing of this motion response.

Hopkins seeks an "upward adjustment" of the actual time expended to reach the requested amount of $40,000. *See* Mem. Supp. at 6 (Dkt. # 119–1, filed Mar. 8, 2010). The court finds, for reasons explained below, that a "downward adjustment" is necessary here.

*Novelty and Difficulty of Questions Raised.*Plaintiff's counsel does not contend that the issues involved were particularly novel or difficult questions of law. On the other hand, Plaintiff's counsel was required to research and prepare a response to a court inquiry regarding whether Defendant Ham (a private citizen) could be held liable under § 1983 and certain issues regarding burden of proof which are not ordinarily issues present in prosecution of § 1983 actions.

*Skill Required to Perform Legal Services Rendered.*Plaintiff's attorney is well-qualified to handle a variety of matters, including gender and age discrimination cases, which provide complex issues regarding burdens of proof. While a "normal" § 1983 case generally presents less complex issues than gender and age discrimination matters, as noted above, this particular case presented two unusual legal questions. Therefore, counsel's experience and qualifications were likely contributing factors to a positive result for Plaintiff in this matter.

*Customary Fee for Like Work.*This factor allows the court to consider "various information, including 'affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent awards by courts in

2010 WL 5060583

comparable cases; and specific evidence of counsel's actual billing practices or other evidence of actual rates which counsel can command in the market.'"*Trimper v. City of Norfolk,* 846 F.Supp. 1295, 1305 (E.D.Va.1994) (quoting *Bluffington v. Baltimore County,* 913 F.2d 113, 130 (4th Cir.1990)); *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.,* 176 F.Supp.2d 510, 535 (D.S.C.2001).

As to customary fee for similar work in the community, it is the fee applicant's burden to "produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."*Westmoreland Coal Co.,* 602 F.3d at 289 (citations and quotations omitted). The rates normally charged to clients who pay on a non contingent basis are significant as they suggest the market's determination of at least the fifth (customary fee) and ninth (experience, reputation and ability of counsel) *Barber* factors. *See Trimper,* 58 F.3d at 76 ("the proper measure of fees is the prevailing market rate in the relevant market, and not the rate charged by the actual attorney in question"); *Rum Creek Coal Sales v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994) (noting that relevant market normally is the district in which the court sits).

**\*4** Plaintiff's counsel submitted his own affidavit indicating that he normally charges clients who pay a per-hour rate $300 per hour. Additionally, Hopkins has provided examples of several cases he has tried to verdict in gender discrimination and certain state law matters. In further support of his motion and at the court's direction, counsel submitted the affidavit of Strom, which indicates that "[w]ith complex civil rights cases of this sort in South Carolina, the community [for similar services] is very limited."Aff. of J. Preston Strom, Jr. at ¶ 22 (Dkt. # 133–1, filed Aug. 13, 2010). Strom also indicates that the "hourly rate requested is substantially less than the hourly rate generally charged by civil rights trial attorneys in the southeast."*Id.*

Hopkins' was awarded attorney's fees at the rate of $250 per hour for a gender and age discrimination case in this district in 2002. *See Kinneyman v. Speedway Super America, LLC,* D.S.C. Civil Action No. 4:01–393–TLW; Hopkins Aff. At ¶ 4. Additionally, this court recently approved attorney's fees at the rate of $290 per hour in a Fair Labor Standards Act (FSLA) matter, *Harrison–Belk v. Rockhaven Community Care Home, Inc.,* D.S.C. Civil Action No. 3:07–54–CMC.

Plaintiff's co-counsel, Paul M. Fata (Fata), has not submitted an affidavit in support of the attorney's fee motion, although an itemized copy of the time expended by Fata and the rate he seeks ($200.00 per hour) is

attached to the motion. *See* Dkt. # 119–3 (filed Mar. 8, 2010).

Based on the support provided, the court concludes that an hourly rate of $300.00 is reasonable for Hopkins, a rate of $200.00 per hour is reasonable for Fata, and that rates of $175.00 and $75.00 per hour are appropriate for Paul B. Deal and Joanna L. Clearly, respectively. Multiplying these rates by the hours expended by each (93.5 hours at $300/hour for Hopkins; 6.97 hours at $200/hour for Fata; 6.2 hours at $175/hour for Deal; and 1.9 hours at $75/hour for Cleary, the requested lodestar amount is $30,671.50.

*Amount in Controversy and Results Obtained.*In this case, Plaintiff prevailed on three causes of action: a § 1983 claim for an unreasonable search under the Fourth Amendment; a state law claim for trespass; and a state law claim for assault. Plaintiff was awarded nominal damages of $1.00 on the § 1983 claim and the state law trespass claim, and $50,000.00 actual damages on the assault claim. The jury awarded punitive damages on each claim ($30,000 on the § 1983 claim and $10,000 on each of the state law claims).

As noted above, Defendants argue that the amount of attorney's fees sought by Plaintiff's counsel "is excessive when viewed in relation to the amount recovered by the Plaintiff on her § 1983 claim."Resp. in Opp. at 2 (Dkt. # 129, filed July 12, 2010). Additionally, Defendants argue against an award of more than $10,000 in attorney's fees as such would implicate Plaintiff's state law claims, which Defendants argue is not allowed under § 1988.

**\*5** As noted by the Third Circuit, the court is "surprised to find that the impact of success on state claims as related to the award of fees under § 1988 has ... been sparsely litigated ...."*Jama v. Esmor Correctional Svcs., Inc.,* 577 F.3d 169, 176 (3d Cir.2009). In *Jama,* the Third Circuit determined that while "the language of § 1988(b) seems to be sufficiently broad to endorse the inclusion of state claims in the consideration of overall success [,] ... we do not find precedent on point that clearly adopts this interpretation as conclusive." *Id.* at 177."While identity between the claims is not required, the state and federal claims must certainly bear some relation in order for the state claim to be considered under § 1988." *Id.* at 179.

Fourth Circuit cases support the conclusion that the ultimate issue for consideration is whether the success and/or failure of claims arise from a common core of facts, and these facts' relationship to a plaintiff's success on the § 1983 claim. In other words, the test appears to be whether the facts supporting the § 1983 action were so "inextricably intertwined with the facts surrounding" the

Gregg v. Ham, Not Reported in F.Supp.2d (2010)

2010 WL 5060583

state law claims, *Abshire v. Walls*, 830 F.2d 1277, 1283 (4th Cir.1987), that counsel "could not have presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events that transpired ...."*Id.*

*Goodwin v. Metts*, 973 F.2d 378 (4th Cir.1992), does not hold to the contrary. In *Goodwin*, the court held that when juries award damages for conduct which not only informs an award under § 1983 but also results in finding for a Plaintiff on a state law cause of action, the "language of section 1988 nowhere indicates that a determination that conduct causing the constitutional deprivation under 42 U.S.C. § 1983[and] also amounts to tortious misbehavior under state law should affect the court's award of attorneys' fees."973 F.2d at 378, 386 (4th Cir.1992).

Plaintiff's success on her § 1983 claim was, to some degree, based on evidence also supporting her assault claim, on which she also prevailed. Plaintiff testified that when Defendant Ham entered her home on October 27, 2007, he carried a shotgun which Plaintiff agreed was aimed at her "if not to shoulder level, [ ] at least ... raised with the barrel pointing approximately head high or chest high."Tr. of Trial at 43 (Dkt. # 134, filed Sept. 30, 2010). Plaintiff also testified that "I didn't know if he was going to shoot or not. I wasn't going to take no chance of him killing me...."*Id.* at 42.

The jury was instructed that the presence of a weapon does not presumptively establish involuntariness; rather, that the totality of the circumstances should be considered to determine whether Plaintiff's consent to Defendant Ham's entry and search of her home was knowing and voluntary. *See* Jury Instructions at 10–11 (Dkt. # 98, filed Feb. 22, 2010).

\*6 The jury weighed the parties' testimony, and found that Defendant Ham entered and searched Plaintiff's home without her free and voluntary consent, thereby violating her Fourth Amendment right. The jury awarded Plaintiff $1.00 in nominal damages on this claim. However, the jury also awarded Plaintiff $30,000 in punitive damages, finding that Defendant Ham's actions were malicious, motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's right to be free from an unreasonable search. *See* Verdict at 3 (Dkt. # 103, filed Feb. 22, 2010).

The court finds that Plaintiff's success on the § 1983 claim was undoubtedly informed by Plaintiff's evidence of Defendant Ham pointing his shotgun at Plaintiff.[5]Therefore, it is unlikely that Plaintiff's attorney could have "presented the constitutional aspects of this

case without developing and presenting the facts surrounding the entire sequence of events that transpired" on the date in question. *Abshire, supra*, 830 F.2d at 1283.

On the other hand, Plaintiff's success on her state law trespass claim added little, if anything, to her success on the § 1983 claim.[6]Plaintiff offered evidence of what she contended were two instances of trespass, one occurring two days before the search, and one several days later. In neither of these instances, however, was Defendant Ham acting under color of state authority, nor can it be said that the presentation of evidence relating to his actions—whether one or two trespasses—was integral to the presentation of the § 1983 search claim.

*Conclusion—Amount Awarded.*Considering the fact that Plaintiff is eligible for an award of attorney's fees, the lodestar amount ($30,671.50), and the Barber factors, the court finds an award of attorney's fees is appropriate in this matter. Plaintiff was successful on her § 1983 claim which vindicated her Fourth Amendment rights. Additionally, the court finds that the presentation of Plaintiff's state law assault claim enhanced Plaintiff's evidence relating to the lack of voluntariness of her consent, and, thereby, the jury's finding in Plaintiff's favor. However, it cannot be said that all of the time counsel expended went to pursuit of Plaintiff's § 1983 claim, nor can it be said that all of the evidence presented on all claims was inexorably intertwined. Because Plaintiff was successful on her § 1983 claim and a related assault claim, the court finds that an award of $20,000 in attorney's fees, two-thirds of the amount sought, is appropriate in this matter.

**D. EXPERT FEES**
Plaintiff seeks recovery of expert witness fees in the amount of $2,632.00. Defendants oppose Plaintiff's request, arguing that the plain language of § 1988(c) precludes this award. To the extent this court is inclined to award expert fees, Defendants argue that they should be limited by 28 U.S.C. § 1821.

The Fourth Circuit and other courts have held that § 1988 does not provide statutory authority for an award of compensation for experts. *Davis v. Richmond, Fredericksburg and Potomac R.R.,* 803 F.2d 1322 (4th Cir.1986). Therefore, Plaintiff's motion for recovery of expert witness fees ($2,632.00) is denied.

**E. COSTS**
\*7 A review of the billing statements attached to

Gregg v. Ham, Not Reported in F.Supp.2d (2010)
2010 WL 5060583

Hopkins' affidavit indicates that costs are sought in the amount of $5,902.53 (including $41.95 in costs expended by Fata). Dkt. # 119–2 at 8 (filed Mar. 8, 2010). Defendants have filed no opposition to this award of costs.

The itemized listing of costs includes a listing for "outside professional fee" of $3,320.35, with no further explanation provided. Plaintiff's failure to include some reasonable explanation of this fee results in its disallowance. Therefore, the court awards costs in the amount of $2,582.18.

**F. CONCLUSION**
For the foregoing reasons, Plaintiff's motion for attorney's fees is granted in part and denied in part. Plaintiff is awarded $20,000 in attorney's fees and costs of $2,582.18.

**IT IS SO ORDERED.**

Footnotes

1    Plaintiff also named Sumter County Sheriff's Department and Senior Deputy Justin Yelton in her Complaint. Plaintiff settled with these Defendants prior to trial.

2    For the causes of action brought under 42 U.S.C. § 1983, Plaintiff also sought attorney's fees and "expert fees." Compl. at 9–10 (Dkt. # 1–1, filed Dec. 16, 2008).

3    As the prevailing party, Plaintiff is eligible for, rather than entitled to, an award of attorney's fees. Under the statute, this court must determine what constitutes a reasonable fee, a determination that requires the court to consider the extent of Plaintiff's success. *See Farrar,* 506 U.S. at 114 ("Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award ....") (internal quotation marks omitted)). If the prevailing party has recovered only nominal damages, the Supreme Court has explained that "the only reasonable fee is *usually* no fee at all."*Farrar,* 506 U.S. at 115 (emphasis added); *see also id.*("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party....").
     In this case, Plaintiff was not only awarded nominal damages, but also was awarded punitive damages on her § 1983 claim. Plaintiff also prevailed on two state law claims and was awarded damages on those claims, including punitive damages.

4    The twelve factors from *Barber* are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the expertise, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fee awards in similar cases. 577 F.2d at 226. See discussion, *infra.*

5    To prove a state law claim of assault, Plaintiff was required to prove by a preponderance of the evidence that the conduct of Defendant Ham placed her in reasonable fear of bodily harm. *See Mellen v. Lane,* 377 S.C. 261, 659 S.E.2d 236, 244 (S.C.Ct.App.2008) (citing *Gathers v. Harris–Teeter Supermarket,* 282 S.C. 220, 317 S.E.2d 748, 754–55 (S.C.Ct.App.1984)).

6    Under South Carolina law, to prove trespass, Plaintiff was required to prove (by preponderance of the evidence) that Plaintiff had legal possession of the property; that Defendant Ham voluntarily entered onto the property; and that the entry was without Plaintiff's permission. *See Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557, 565 (S.C.Ct.App.2004).

**End of Document**    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Case 8.

*Glidewell v. City of Greenville*, 2012 WL 951777

Glidewell v. City of Greenville, S.C., Not Reported in F.Supp.2d (2012)

2012 WL 951777

2012 WL 951777
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Greenville Division.

Joshua A. GLIDEWELL and Randy A. Bryson,
Plaintiffs,
v.
CITY OF GREENVILLE, South Carolina,
Defendant.

Civil Action No. 6:09–01932–JMC. | March 20,
2012.

**Attorneys and Law Firms**

Frederick Herbert Nelson, Nicole C. Myers, Orlando, FL,
Samuel Darryl Harms, III, Harms Law Firm, Greenville,
SC, for Plaintiffs.

Ronald William McKinney, Robert P. Coler, Greenville,
SC, for Defendant.

*ORDER*

J. MICHELLE CHILDS, District Judge.

*1 Plaintiffs, Joshua A. Glidewell ("Glidewell") and
Randy A. Bryson ("Bryson") (collectively, "Plaintiffs"),
filed this action pursuant to 42 U.S.C. § 1983 against
Defendant City of Greenville, South Carolina
("Defendant"), alleging violations of their civil rights
protected by the United States Constitution, pmbl.-art.
XXVII; the Constitution of the State of South Carolina,
pmbl.-art. XVII; and the South Carolina Religious
Freedom Act ("SCRFA"), S.C.Code Ann. §§
1–32–10–60. (ECF No. 1.) Plaintiffs also alleged state
law claims for false imprisonment and false arrest. (*Id.*)
On October 14, 2011, the court approved and entered a
consent decree at the request of the parties, which order
disposed of all Plaintiffs' claims, excluding the award of
any attorneys' fees and/or costs to Plaintiffs. (ECF No.
71.) This matter is before the court on Plaintiffs' motion
for an award of attorneys' fees and costs pursuant to 42
U.S.C. § 1988, the SCRFA, and Rule 54 of the Federal
Rules of Civil Procedure. (ECF No. 93.) Defendant
objects to the amount of attorneys' fees sought by
Plaintiffs. (ECF No. 99.)

In accordance with Fed.R.Civ.P. 54(d)(2)(D) and the
parties' consent decree, the matter was referred to United
States Magistrate Judge Kevin F. McDonald, for
handling. (*See* ECF Nos. 71 & 104.) On February 23,
2012, the Magistrate Judge issued a Report and
Recommendation in which he recommended that
Plaintiffs' motion for attorneys' fees and costs be granted,
in part, by awarding Plaintiffs $71,573.00 in attorney's
fees and $7,664.21 in costs. (ECF No. 120.) Plaintiffs
filed objections to the Report and Recommendation
asking the court to reject the Magistrate Judge's
recommendation and award Plaintiffs the entire amount of
attorneys' fees requested in their motion. (ECF No. 121.)
For the reasons set forth below, the court **ACCEPTS** the
Report and Recommendation of the Magistrate Judge and
**GRANTS,** in part, Plaintiffs' motion for an award of
attorneys' fees and costs, but declines to award the entire
amount of attorneys' fees requested by Plaintiffs.

**I. RELEVANT FACTUAL AND PROCEDURAL
BACKGROUND**

On September 21, 2007, Plaintiffs allege that Glidewell
was arrested by Defendant's police department officers as
he was distributing religious literature and discussing the
Bible with pedestrians on Main Street in Greenville,
South Carolina. (ECF No. 31, ¶¶ 15–24.) Glidewell was
cited for violating section 24–32 of the Greenville City
Code, which ordinance inter alia made it unlawful for any
person to "molest or disturb any person by the making of
obscene remarks or such remarks and actions as would
humiliate, insult, or scare any person."(ECF No. 31, ¶¶
20, 21.) On October 31, 2008, Defendant's municipal
judge dismissed the charge against Glidewell. (*Id.* at ¶
26.)

In October 2007 and September 2008, Plaintiffs allege
that Bryson was prevented by Defendant's police
department officers from discussing the Bible and
distributing religious literature to pedestrians on Main
Street in downtown Greenville. (ECF No. 31, ¶¶ 28–35.)

*2 On July 21, 2009, Glidewell filed a summons and
complaint in this action against Defendant alleging
violations of the Free Speech Clause and Free Exercise
Clause of the First Amendment, the Due Process Clause
of the Fifth and Fourteenth Amendments, the Equal
Protection Clause of the Fourteenth Amendment, the
Constitution of the State of South Carolina, and the
SCRFA. (ECF No. 1.) Glidewell also alleged state law

Glidewell v. City of Greenville, S.C., Not Reported in F.Supp.2d (2012)

2012 WL 951777

claims for false arrest and false imprisonment. (*Id.*) Defendant answered the complaint denying Glidewell's claims on August 12, 2009. (ECF No. 10.) On February 26, 2010, Glidewell moved to amend the complaint to add Bryson to the lawsuit. (ECF No. 28.) On March 12, 2010, the court granted Glidewell's motion to amend. (ECF No. 30.) Glidewell amended his complaint on March 16, 2010. (ECF No. 31.) On March 30, 2010, Defendant filed an answer to the amended complaint denying Plaintiffs' allegations. (ECF No. 33.)

On August 23, 2010, the case was transferred from the Honorable R. Bryan Harwell to the Honorable J. Michelle Childs. (ECF No. 65.) On October 12, 2010, the parties moved the court for the entry of a consent decree resolving the case, which motion was granted by the court on October 14, 2010. (ECF Nos. 70 & 71.) On May 18, 2011, Plaintiffs moved the court to award them attorneys' fees and costs. (ECF No. 93.) Also, on May 18, 2011, Plaintiffs filed a bill of costs requesting that Defendant be taxed costs. (ECF No. 94.)

On June 6, 2011, Defendant filed general opposition to the bill of costs, while reserving the right to move the court for review of any inappropriate action taken by the Clerk of Court in regards to the bill of costs. (ECF No. 98.) On June 20, 2011, Defendant filed opposition to Plaintiffs' motion for attorneys' fees and costs asserting that Plaintiffs were not the prevailing party and the amount of fees and costs requested were unreasonable. (ECF No. 99.) Plaintiffs filed a reply in support of the award of attorneys' fees and costs on June 30, 2011. (ECF No. 101.) On July 12, 2011, the court entered an order referring Plaintiffs' motion for attorneys' fees and costs to the Magistrate Judge. (ECF No. 104.)

## II. LEGAL STANDARD AND ANALYSIS

### A. *Standard*

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber,* 423 U.S. 261, 270–71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to-including those portions to which only "general and conclusory" objections have been made-for clear error. See Fed. R. Civ P. 72(b)(3); *see also Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th

Cir.2005); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983); *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* Fed.R.Civ.P. 72(b).

**\*3** Plaintiffs move for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the SCRFA, and Fed.R.Civ.P. 54. Pursuant to 42 U.S.C. § 1988, the court is permitted to allow the prevailing party in a section 1983 action "a reasonable attorney's fee." See 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections ... 1983... of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."). The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks and citation omitted). "Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotation marks and citation omitted). Moreover, under SCRFA, if a person prevails in a proceeding where the exercise of religion has been burdened, "the court shall award attorney's fees and costs." S.C.Code Ann. § 1–32–50.

Fed.R.Civ.P. 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). There is a presumption in favor of awarding costs to a prevailing party. *See Teague v. Bakker,* 35 F.3d 978, 996 (4th Cir.1994); *see also Cherry v. Champion Intern. Corp.,* 186 F.3d 442, 446 (4th Cir.1999). To overcome the presumption favoring the prevailing party and to deny that party costs, the court must articulate some "good reason" for doing so. *Teague,* 35 F.3d at 996; *see also Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.,* 899 F.2d 291, 296 (4th Cir.1990).

### B. *The Prevailing Party*

The threshold issue under 42 U.S.C. § 1988 is whether plaintiffs are "prevailing parties." *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Mercer v. Duke Univ.,* 401 F.3d 199, 203 (4t' Cir.2005) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121

L.Ed.2d 494 (1992)).“To qualify as a “prevailing party,” a plaintiff need not prevail on every claim or issue raised, but only “on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.”*Hensley,* 461 U.S. at 433. A plaintiff who receives only nominal damages is nonetheless a prevailing party under § 1988 because “[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.”*Farrar,* 506 U.S. at 113. Moreover, “[a] party may prevail by virtue of a voluntary action by the opposing party through settlement or a consent decree.”*Child v. Spillane,* 866 F.2d 691, 692 (4th Cir.1989). Therefore, “a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.”*Hensley,* 461 U.S. at 429.

**\*4** Upon his review, the Magistrate Judge found that Plaintiffs were the prevailing party in this action. The Magistrate Judge supported his finding with evidence in the record that (1) Plaintiffs' suit resulted in Defendant repealing the subpart of section 24–32 of the Greenville City Code, which section Glidewell was cited for violating; (2) the consent decree permanently prevented the defendant's enforcement of section 24–32 of the Greenville City Code against Plaintiffs absent a breach of peace; (3) the amount paid to Glidewell to settle the matter appeared to be a fair sum to resolve his damages; and (4) the consent decree specifically indicated the recognition that Plaintiffs would be entitled to “an acceptable amount” of attorneys' fees and costs as a result of resolving the case via the consent decree. (ECF No. 120, pp. 4–5.)

Defendant did not file an objection to the Magistrate Judge's recommendation that Plaintiffs should be declared the prevailing party by the court. Therefore, in accordance with the reasons stated by the Magistrate Judge, the court finds that Plaintiffs are “prevailing parties” in this matter. *See Camby v. Davis,* 718 F.2d 198, 199 (4th Cir.1983) (observing that in the absence of objections to the Magistrate Judge's Report and Recommendation, the court is not required to provide an explanation for adopting the recommendation).

## C. *Plaintiffs' Request for Attorneys' Fees and Costs*
Plaintiffs were represented by Samuel D. Harms from the Harms Law Firm, P.A. (“HLF”) and Frederick H. Nelson (“Nelson”) and Nicole C. Myers (“Myers”) of the American Liberties Institute (“ALI”), a public interest organization specializing in constitutional rights and

religious liberties. (ECF No. 93–3, ¶ 12; ECF No. 93–4, ¶ 4.) ALI contends that its attorneys reasonably expended 486.6 hours on this matter, which total includes 352.7 hours by Nelson, 124.8 hours by Myers, and 9.1 hours by ALI's paralegal. (*See* ECF No. 93, p. 3; ECF No. 114, p. 4.) ALI further contends that the reasonable hourly rate for Nelson is $350, for Myers is $250, and for ALI's paralegal is $90. (ECF No. 114, p. 3 at ¶ 9.)

HLF contends Harms reasonably expended 322.5 hours on the matter and his paralegal 53.1 hours. (ECF No. 93, p. 3; ECF No. 101–1, p. 3.) HLF further contends that $250 per hour is a reasonable rate for Harms' time and that his paralegal's hourly rate is $90. (ECF No. 93–3, p. 6.) Therefore, for all work performed up to, but excluding the objections to the Magistrate Judge's Report and Recommendation, the total award of reasonable attorneys' fees and costs sought by ALI is $147,583.71 and for HLF is $77,224.00. (*See* ECF No. 93, p. 3; ECF No. 114, pp. 3–4; ECF No. 101, p. 14.)

## D. *Determining the Reasonableness of the Attorney's Fees Being Requested*
To assess reasonable attorneys' fees, the “court must first determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.”*Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir.2009) (citing *Grissom v. The Mills Corp.,* 549 F.3d 313, 310 (4th Cir.2008)). In determining what constitutes a reasonable number of hours and rate, the court considers the following twelve factors set out in *Barber v. Kimbrell's* Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978):(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978); *Robinson,* 560 F.3d at 245 (reaffirming use of the *Barber* factors).“[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee.”*E.E.O.C. v. Serv. News Co.,* 898 F.2d 958, 965 (4th Cir.1990). While the court must consider all

Glidewell v. City of Greenville, S.C., Not Reported in F.Supp.2d (2012)

2012 WL 951777

twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. *Id.*

### 1. *Reasonable Hourly Rate*

**\*5** Fee applicants bear the burden of establishing that the rates they request are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."*Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)."In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."*Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) (internal citations and quotation marks omitted)."The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits."*Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994) (citing *Nat'l Wildlife Fed'n v. Hanson,* 859 F.2d 313, 317 (4th Cir.1988)).

Upon his review, the Magistrate Judge found that the rates proposed by the Plaintiffs' attorneys were unreasonable in this market. (ECF No. 120, p. 10.) Specifically, the Magistrate Judge determined that (1) a $300 hourly rate was unreasonable in the District of South Carolina; (2) the relief obtained for Plaintiffs was not so impressive as to command inflated attorneys' fees; and (3) Plaintiffs had failed to establish that the South Carolina bar lacked attorneys skilled at handling their claims. (*Id.* at pp. 11–13.)The Magistrate Judge concluded that a reasonable hourly rate was $275 for Nelson, $225 for Harms, and $90 for each paralegal. (*Id.* at p. 13.)

Plaintiffs objected to the Magistrate Judge's determination that the rates requested by their attorneys were unreasonable. Plaintiffs asserted that they presented evidence establishing that the rates requested-$350.00 per hour for Nelson, $250.00 per hour for Myers, $250.00 per hour for Harms, and $90.00 per hour for a paralegal-were reasonable in the Greenville, South Carolina market and a national market based on their attorneys' experience, skill level and expertise of the counsel involved in the litigation of this case. (ECF No. 121, p. 12.) Plaintiffs specifically referenced the reasonableness of Nelson's higher hourly rate as the result of his recognition as national expert in civil rights cases. (*Id.*) Plaintiffs further argued that the hourly rates requested were rates that have been awarded around the country. (*Id.*)

Upon review of Plaintiffs' objections in the context of the

relevant *Barber* factors,[1] the court finds that Plaintiffs' attorneys have failed to provide satisfactory specific evidence that the rates sought were the going rates in the Greenville community for the type of work they wanted to be compensated for. In this regard, Plaintiffs' attorneys failed to provide specific information regarding the market rate in the Greenville community for First Amendment work,[2] nor did they cite to fee awards in similar First Amendment cases in the District of South Carolina.[3]*See Robinson v. Equifax,* 560 F.3d 235, 245 (4h Cir.2009) (the parties must prove the prevailing market rate via the affidavits of other local attorneys who are familiar with the skills of the applicants and the type of work in the relevant community). Therefore, the court finds that Plaintiffs' objection to the Magistrate Judge's report is without merit and the hourly rates requested by Plaintiffs' attorneys are excessive and unreasonable. Accordingly, the court accepts the Magistrate Judge's recommendation as to the hourly rates that should be used to calculate the attorneys' fee award in this matter.

### 2. *Hours Reasonably Expended*

**\*6** Beyond establishing a reasonable hourly rate, the court is required to calculate the number of hours reasonably expended by the prevailing party seeking attorneys' fees. In making this determination, "the court should not simply accept as reasonable the number of hours reported by counsel."*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. 5,* C/A No. 8:04–1866–HMH, 2007 WL 1302692, at \*2 (D.S.C. May 2, 2007) (citing *Espinoza v. Hillwood Square Mut. Ass'n,* 532 F.Supp. 440, 446 (E.D.Va.1982)). Further, "duplicative, excessive, or redundant hours should not be compensated under § 1988."*Trimper v. City of Norfolk, Va.,* 58 F.3d 68, 76 (4th Cir.1995).

In his assessment of the hours expended by Plaintiffs' attorneys, the Magistrate Judge concluded that (1) the 124.8 hours attributable to Myers were unnecessary and excessive given Nelson's presence in the case; (2) the total number of hours claimed by the Plaintiffs' attorneys represent a great deal of "duplicative, excessive, and redundant hours"; (3) many of the hours claimed by Plaintiffs' attorneys consisted of communication between co-counsel, which was excessive for communication between experienced First Amendment lawyers; and (4) the uncomplicated nature of the law and discovery in the instant case did not warrant the high number of hours expended by Plaintiffs' attorneys. (ECF No. 120, pp. 8–10.) As a result, the Magistrate Judge concluded that the reasonable hours claimed by Plaintiffs' attorneys should be reduced to 240 hours, but the hours expended by the paralegals of Plaintiffs' attorneys–9.1 hours by

2012 WL 951777

ALI's paralegal and 50.6 hours by HLF's paralegals-were reasonable. (ECF No. 120, p. 10.)

In the context of hours reasonably expended, Plaintiffs only objected to the Magistrate Judge's recommendation that all hours expended by Myers should be eliminated. (ECF No. 120, p. 13.) Plaintiffs stated that the Magistrate Judge should have utilized the standard identified in *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), that if certain work performed by attorneys could have (or should have) been performed by paralegals, the proper method of awarding fees is to award those hours at the paralegal rate. (*Id.* (citing *Jenkins,* 491 U.S. at 288 n. 10).) As a result, Plaintiffs asserted that the court should award Myers fees at the paralegal rate for those tasks deemed appropriate for a paralegal and award her attorney rate for work normally performed by associate attorneys. (*Id.* at p. 15.)

After careful review of Plaintiffs' attorneys' time submissions in the context of the relevant *Barber* factors, the court agrees with the Magistrate Judge that Plaintiffs' attorneys' expended more hours than reasonably necessary to litigate this matter. Because Plaintiffs did not state a specific objection to the Magistrate Judge's overall recommendation as to the total number of hours their attorneys should be compensated for, the objection regarding Myers' hourly rate is disregardable since the compensable hours attributable to ALI will be at Nelson's higher rate of $275. Therefore, the court finds that the number of compensable hours claimed by Plaintiffs' attorneys should be reduced and accepts the Magistrate Judge's recommendation as to the number of hours Plaintiffs' attorneys should be compensated for.

### 3. *Final Lodestar Determination*
*7 Based on the foregoing and in accordance with the apportionment and reasonable rates and hours as outlined in the Magistrate Judge's Report and Recommendation,[5] the court finds that attorneys' fees in the lodestar amount of $71,573.00[6] should be awarded to Plaintiffs in this matter. Of this total amount, ALI should be awarded $43,419.00, and HLF should be awarded $28,154.00. The court declines to enhance these fee awards as requested by Plaintiffs' attorneys in their objections to the Report and Recommendation. (*See* ECF No. 121, pp. 15–18.)

### E. *Bill of Costs*

Plaintiffs filed a bill of costs requesting that Defendant be taxed costs totaling $4,558.40. (ECF No. 94.) Defendant filed general opposition to the bill of costs, reserving the right to move the court to review any action taken by the Clerk of Court in regards to the bill of costs. (ECF No. 98.) The Magistrate Judge determined that Defendant's objection to the bill of costs was based on the position that Plaintiffs were not the prevailing party and was unrelated to the specific costs listed on the invoice. (ECF No. 120, p. 14.) The Magistrate Judge found that the requested costs appeared appropriate under 28 U.S.C. § 1920, Fed.R.Civ.P. 54(d), and Local Civil Rule 54.03 DSC and he recommended that the Clerk of Court should tax these costs to Defendant. Defendant did not file an objection to the Magistrate Judge's recommendation that it should be taxed the amount of costs contained in the bill of costs. Therefore, the court finds that Defendant should be taxed costs in the amount of $4,558.40.

### F. *Litigation Costs*
In addition to costs found in the bill of costs, the Magistrate Judge recommended awarding Plaintiffs' attorneys $3,105.81 in other litigation-related costs. (*See* ECF No. 120, pp. 10, 14.) It is well-established that plaintiffs who are deemed entitled to attorneys' fees are also entitled to recover their reasonable litigation-related expenses as part of their overall award. *See Daly v. Hill,* 790 F.2d 1071, 1084 (e Cir.1986). Defendant did not object to the Magistrate Judge's recommendation that Plaintiffs be awarded $3,105.81 in other litigation costs. Accordingly, the court accepts the Magistrate Judge's recommendation and awards Plaintiffs additional litigation costs in the amount of $3,105.81.

### III. CONCLUSION

Based on the foregoing, the court hereby **GRANTS,** in part, Plaintiffs' motion for an award of attorneys' fees and costs. (ECF No. 93.) Defendant City of Greenville, South Carolina is hereby **ORDERED** to pay Plaintiffs $71,573.00 in attorneys' fees and $7,664.21 in costs. The court accepts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED.**

Footnotes

Glidewell v. City of Greenville, S.C., Not Reported in F.Supp.2d (2012)

2012 WL 951777

---

1    The following *Barber* factors are used in determining a reasonable hourly rate, including (1) the preclusion of employment due to acceptance of the case; (2) the customary fee for like work; (3) whether the fee is fixed or contingent; (4) the amount in controversy and the results obtained; (5) the experience, reputation, and ability of the attorney; (6) the "undesirability" of the case; (7) the nature and length of the attorney's professional relationship with the client; and (8) fee awards in similar cases. *Trimper v. City of Norfolk,* 58 F.3 d 68 (4th Cir.1995).

2    In support of their motion for attorneys' fees, Plaintiffs attorneys, in addition to their own affidavits, submitted an affidavit from James G. Carpenter ("Carpenter"), an attorney practicing in Greenville, South Carolina. In his affidavit, Carpenter, although he stated that the rates requested by Plaintiffs' attorneys were reasonable, acknowledged that he did not know other attorneys like Plaintiffs' attorneys who practiced First Amendment religious liberties issues in the Greenville community. (ECF No. 93–5, ¶ 6.)

3    Plaintiffs' attorneys cite a number of cases approving attorneys' fees in excess of $300 per hour. However, none of the cases reflect the rate in the Greenville, South Carolina market. *See Trimper,* 58 F.3d at 76 ("[T]he proper measure of fees is the prevailing market rate in the relevant market ....").

4    Plaintiffs' attorneys sought a rate of $250.00 per hour for Myers. (*See* ECF No. 93–4, p. 12.)

5    The Magistrate Judge attributed sixty percent of the 240 reasonable hours to Nelson and forty percent of the 240 reasonable hours to Harms. This percentage reflected the proportionate contribution of ALI and HLF to the total work expended on behalf of Plaintiffs.

6    This amount includes the fees for the paralegals for the firms.

---

End of Document                                     © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# Case 9.

*Child Evangelism Fellowship v. Anderson School District,*
2007 WL 1302692

Child Evangelism Fellowship of South Carolina v. Anderson..., Not Reported in...

2007 WL 1302692

2007 WL 1302692
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Anderson/Greenwood Division.

CHILD EVANGELISM FELLOWSHIP OF SOUTH
CAROLINA, Plaintiff,
v.
ANDERSON SCHOOL DISTRICT 5, Defendant.

C.A. No. 8:04-1866-HMH. | May 2, 2007.

**Attorneys and Law Firms**

Samuel Darryl Harms, III, Harms Law Firm, Greenville, SC, Erik William Stanley, Liberty Counsel, Scott Edwin Thompson, Liberty University School of Law, Lynchburg, VA, Mathew Duane Staver, Liberty Counsel, Maitland, FL, for Plaintiff.

David Leon Morrison, Kenneth Paul Woodington, Davidson Morrison and Lindemann, Columbia, SC, for Defendant.

**OPINION & ORDER**

HENRY M. HERLONG, JR., United States District Judge.

**\*1** This matter is before the court on Child Evangelism Fellowship, Inc. of South Carolina's ("Child Evangelism") motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Rule 54(d) of the Federal Rules of Civil Procedure, and Local Civil Rules 54.02 and 54.03 of the District of South Carolina.

**I.FACTUAL AND PROCEDURAL BACKGROUND**

This case is on remand from the United States Court of Appeals for the Fourth Circuit. On December 15, 2006, the Fourth Circuit held that the Defendant's policy governing access to school facilities "exceeds the bounds permitted by the First Amendment."*Child Evangelism Fellowship of S.C. v. Anderson School Dist. Five,* 470 F.3d 1062, 1074 (4th Cir.2006). The Fourth Circuit reversed the judgment of this court and remanded the case

with instructions to refund Child Evangelism Fellowship's ("CEF") usage fees and to award such other relief as the district court determines is appropriate and consistent with the Fourth Circuit's decision. *Id.* In addition, the Fourth Circuit held that Child Evangelism "shall also be awarded reasonable attorneys' fees."*Id.* at 18 n. 4.

**II.DISCUSSION OF LAW**

In the instant case, Child Evangelism was primarily represented by eight attorneys associated with the nonprofit organization, Liberty Counsel. Liberty Counsel seeks an award of $231,597 in attorneys' fees incurred for work performed prior to any work related to the instant motion ("litigation phase") and $7,335.95 in costs. In addition, Liberty Counsel seeks an award of $34,385.79 in attorneys' fees and $211.29 in costs for work performed in connection with the instant motion ("fees phase"). Samuel Harms ("Harms") represented Child Evangelism as local counsel and seeks attorneys' fees in the amount of $40,621. Of this total, Harms seeks $4,815 for work performed in connection with the fees phase.

"In calculating an award of attorneys' fees, a court should determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."*Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir.1998) (internal quotation marks omitted).

In deciding what constitutes a reasonable number of hours and rate, the district court generally is guided by the following particular factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

**\*2** *Id.* (internal quotation marks omitted); *see also Daly v. Hill,* 790 F.2d 1071, 1076 (4th Cir.1986) (applying

**Child Evangelism Fellowship of South Carolina v. Anderson..., Not Reported in...**

2007 WL 1302692

*Johnson* factors to a claim for attorney's fees pursuant to 42 U.S.C. § 1988).

Liberty Counsel claims to have expended a total of 601.45 hours in the litigation phase of the instant case. The time is allocated as follows: Attorney Mathew Staver ("Mr.Staver") expended 165.2 hours, Attorney Erik Stanley ("Stanley") expended 270.5 hours, Attorney Joel Oster ("Oster") expended 64.3 hours, Attorney Scott Thompson ("Thompson") expended 40.75 hours, Attorney Mary McAlister ("McAlister") expended 6.3 hours, Attorney Anita Staver ("Ms.Staver") expended 1.6 hours, Attorney David Corry ("Corry") expended 35 hours, Attorney Rena Lindevaldsen ("Lindevaldsen") (collectively "Liberty Counsel attorneys") expended 0.8 hours, Liberty Counsel's law clerk expended 2.2 hours, and Liberty Counsel's paralegals Lynette Campbell, Caddice McGuire, and Belinda Wetherington (collectively "Liberty Counsel paralegals") expended 14.8 hours. (Pl.'s Mot. Attys.' Fees 9.) Liberty Counsel contends that the following rates are reasonable hourly rates for each respective professional who performed work in the instant case: Mr. Staver, $475; Stanley, $270; Oster, $270; Thompson, $270; McAlister, $270; Ms. Staver, $175; Corry, $350; Lindevaldsen, $295; Liberty Counsel law clerk, $90; and the Liberty Counsel paralegals, $85.00. (*Id.*)

In addition, Harms expended 155.7 hours, and his paralegals, Paula Pheanis and Justin Alexander, expended 9.1 hours in the litigation phase. Harms contends that $225 per hour is a reasonable rate for his time, and that his paralegals' hourly rate is $85. (*Id.*) Therefore, counsel for Child Evangelism claims that the reasonable time expended performing legal services in connection with the litigation phase of the instant case totals 766.25 hours and seeks to recover $231,597 in attorneys' fees as a result of that work.

### A. Hours

Initially, the court is required to calculate the number of hours reasonably expended by Child Evangelism's attorneys. In making this determination, "the court should not simply accept as reasonable the number of hours reported by counsel."*Espinoza v. Hillwood Square Mut. Ass'n,* 532 F.Supp. 440, 446 (E.D.Va.1982). Further, "duplicative, excessive, or redundant hours should not be compensated under § 1988."*Trimper v. City of Norfolk, Virginia,* 58 F.3d 68, 76 (4th Cir.1995). In the instant case, a total of nine attorneys, five paralegals, and one law clerk expended 766.25 hours in the litigation phase of this

case and 120.4 hours in the fees phase. In addition, attorneys from two law firms performed work on behalf of Child Evangelism.

First, the court finds the level of complexity of the instant case did not demand the work of nine attorneys. Child Evangelism fails to demonstrate why the case required such a large number of attorneys. Therefore, the court will not award attorney's fees for the hours expended by Ms. Staver, McAlister, and Lindevaldsen. *See id.* at 76-77 ("Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion, and indeed falls soundly within the district court's proper discretion in determining an attorney's fee award.").

**\*3** Second, the court finds that the total number of hours claimed by Child Evangelism attorneys represents a great deal of "duplicative, excessive, and redundant hours." *Id.* at 76.The instant case did not demand complicated discovery or legal briefing so as to justify the extremely high number of hours expended by Child Evangelism attorneys. Further, while the court finds that it was proper for Child Evangelism to employ Liberty Counsel in addition to Harms as local counsel, the high number of hours claimed as well as the high level of preparation and competence claimed by both firms leads the court to find the existence of a duplication of efforts. *See Espinoza,* 532 F.Supp. at 446 ("When several firms are involved, the issue of duplication can be especially difficult."). The time records submitted by Liberty Counsel and Harms support a finding of a great deal of duplication of efforts. By way of example, attorneys from both firms expended significant time preparing for oral arguments before the United States Court of Appeals for the Fourth Circuit in addition to travel time to Richmond, Virginia for the purpose of attending oral arguments. The significant time spent on the same issue by attorneys from both law firms indicates an unnecessary duplication of efforts.

Finally, the time sheets submitted by the Liberty Counsel attorneys suggest an excessive amount of time spent on tasks. By way of example, Corry, an attorney for Liberty Counsel, expended two-tenths of an hour reviewing an apology letter from Federal Express for incorrectly delivering a package addressed to the United States Court of Appeals for the Fourth Circuit. (Staver Decl. Ex. A (Liberty Counsel Accounting R. 45).) In addition, the Liberty Counsel attorneys never recorded less than two-tenths of an hour for any task, regardless of the significance of the task. (*Id.* Ex. A (Liberty Counsel Accounting R., generally).) In contrast, Harms' time record contains a great deal of entries for equivalent tasks that required only one-tenth of an hour to complete. (Harms Decl., generally.)

Child Evangelism Fellowship of South Carolina v. Anderson..., Not Reported in...

2007 WL 1302692

In general, the uncomplicated nature of law and discovery in the instant case did not warrant the high number of hours expended by Child Evangelism's attorneys. The case involved limited discovery and activity in this court, and unremarkable appellate activity. Child Evangelism's attorneys are all well-experienced in First Amendment cases and claim high-end fees for their services. However, "[t]he rationale for allowing high-end fees in civil rights cases is that attorneys with experience in skill in civil rights cases will be able to avoid excess time and research on the issues."*Trimper v. City of Norfolk, Virginia,* 846 F.Supp. 1295, 1306 (E.D.Va.1994). Based on the foregoing, the court will reduce the hours claimed by Child Evangelism, and finds that a total of 340 hours was a reasonable number of hours for Child Evangelism's attorneys to expend on the instant case. Further, the court finds that the hours expended by paralegals and Liberty Counsel's law clerk are reasonable. Accordingly, the court will award attorney's fees based on 2.2 hours expended by Liberty Counsel's law clerk and 23.9 hours expended by paralegals. Finally, the court finds that the costs of $7335.95 incurred by Child Evangelism during the litigation phase are well-documented, reasonable, and necessary.

### B. Rates

**\*4** The court finds that the rates proposed by Liberty Counsel attorneys are unreasonable in this market. First, "the law is clear that in seeking attorney's fees under section 1988, attorneys are under a duty to minimize expenses."*Trimper,* 58 F.3d at 76. As stated above, a total of nine attorneys, each claiming high rates, allegedly spent a total of 740.15 hours working on behalf of Child Evangelism. Liberty Counsel contends that the high rates are justified because "lead counsel is a recognized national expert in civil rights cases ... [and] has assembled a team of lawyers dedicated to religious liberties and civil rights."(Pl.'s Mem. Supp. Award Attys.' Fees 11.) Thus, Liberty Counsel contends that "the requested rates are reasonable based on the experience, skill level and expertise of the counsel involved in the litigation of the case."(*Id.* 11.)

While not determinative, Anderson School District 5 ("Defendant") billed approximately $42,400 for 330 attorney hours spent on the case. (Def.'s Mem. Opp'n Mot. Attys.' Fees Ex. 1 (Sherri H. Rodgers ("Rogers") Aff. ¶ 3).) The Defendants employed only three attorneys, one of whom billed only 5.5 hours. The rates for the Defendant's attorneys ranged between $110 and $130 per

hour over the course of the case.

In addition, the Defendants submit an affidavit by Kimberly L. Anderson ("Anderson"), who is employed by the South Carolina School Boards Association ("Association").(*Id.* Ex. 6 (Anderson Aff. ¶ 1).) Anderson states that in the course of her employment, she retains counsel throughout South Carolina to represent school districts and other insureds, and that the litigation for which she retains counsel "includes numerous instances of constitutional litigation, including First Amendment cases."(*Id.* Ex. 6 (Anderson Aff. ¶¶ 2-3).) Anderson states that in June 2004, the Association paid its retained attorneys and their assistants at the following rates: $120 per hour for partners, $100 per hour for associates, $65 per hour for paralegals, and nothing for law clerks. (*Id.* Ex. 6 (Anderson Aff. ¶ 4).) In addition, Anderson states that these rates were raised $10 per hour, respectively, beginning in July 2005 and continuing through the present. (*Id.* Ex. 6 (Anderson Aff. ¶ 5).)

In his declaration, Harms states that considering the cases he takes on a contingency basis, in 2005 he averaged approximately $285 per hour, and in 2006 he averaged $321 per hour. (Harms Decl. ¶ 16.) However, Harms does not identify the kinds of cases that resulted in these fees. In addition, Harms states that he considers $225 per hour to be a reasonable rate for his time in the instant case. (*Id.*)

The fifth *Brodziak* factor requires the court to consider the customary fee for like work, and the twelfth factor requires the court to consider attorney's fees awarded in similar cases. Based on the affidavits of Rogers and Anderson, and the declaration of Harms, the court finds evidence that the customary fees for cases of this type in this market range from $110 per hour to $225 per hour. Liberty Counsel cites a number of cases approving attorney's fees in excess of $300 per hour. However, none of the cases reflect the rate in the relevant market of the District of South Carolina. *See Trimper,* 58 F.3d at 76 ("[T]he proper measure of fees is the prevailing market rate in *the relevant market*...."). Therefore, these cases are of little to no value to an analysis pursuant to factors five and twelve in determining customary fees charged in this market and awarded in similar cases.

**\*5** The sixth factor requires the court to consider the attorney's expectations at the outset of the litigation. The court agrees with Child Evangelism that under the sixth factor, the attorneys for Child Evangelism should be compensated at a higher rate than the Defendant to account for their assumption of "the risk of not receiving a fee award if litigation is unsuccessful."*Espinoza,* 534

**Child Evangelism Fellowship of South Carolina v. Anderson..., Not Reported in...**

2007 WL 1302692

F.Supp. at 450. In addition, pursuant to the ninth factor, a reasonable fee should take into account the fact that the Liberty Counsel attorneys, to varying degrees, are experienced in First Amendment cases, and that the lead counsel, Staver, is nationally recognized for his prominence as an attorney specializing in, among other things, First Amendment law. (Staver Decl., generally.) Therefore, the court will adjust the lodestar rate for Liberty Counsel attorneys to account for the contingent nature of their fees and their reputation and experience.

Factors eight and ten counsel against an award of high-end attorneys' fees. There is no indication that the case was undesirable in the legal community, and the usage fees that the Fourth Circuit ultimately ordered the Defendant to refund to Child Evangelism were a relatively low $1545. In addition, there is no evidence regarding the opportunity cost to Child Evangelism's attorneys in representing Child Evangelism pursuant to the fourth factor. Finally, the relationship between Liberty Counsel and Child Evangelism began in December 2003, which doesn't indicate a long-standing relationship that would influence the reasonable rates.

Based on the foregoing and taking into account the *Brodziak* factors, the court finds that the hourly rates requested by the Liberty Counsel attorneys are excessive and unreasonable. Accordingly, the court finds that the rates used to calculate the fee award in the present case shall be as follows: Staver, $275 per hour; Stanley, $250 per hour; Oster, $250 per hour; Corry, $250 per hour; and Thompson, $250 per hour. In addition, the court finds that Harms' requested rate of $225 per hour is reasonable for this market. Accordingly, Harms' fees will be calculated at his requested rate of $225 per hour. The court finds that the paralegal rate of $85 per hour and the law clerk rate of $90 per hour are reasonable.

For purposes of calculating the award of attorney's fees, and due to the varying rates attributed to each attorney, the court will attribute twenty percent of the 340 reasonable hours as found by this court to Staver and twenty percent to Harms. This percentage reflects the proportionate contribution of each attorney to the total work expended on behalf of Child Evangelism. Based on this apportionment and the reasonable rates and hours as found by this court, attorney's fees in the amount of $87,229.50 are awarded to Child Evangelism for the litigation phase of the instant case. Of this amount, Liberty Counsel is awarded $71,156, and Harms is awarded $16,073.50.

*6 Finally, the court finds that the Plaintiff's request for $38,989 .50 in attorneys' fees resulting from 120.4 hours of work in the fees phase of the instant case is grossly excessive. "The prevailing party should not be awarded the cost of seeking attorneys fees where it appears that plaintiff has not made sufficient effort to minimize the cost of seeking said fees."*Trimper,* 846 F.Supp. 1308. The court granted the Defendant's motion for discovery regarding the attorneys' fees issue. However, the discovery period was extremely brief and the issues uncomplicated. Therefore, the court awards Child Evangelism $5,000 in attorneys' fees and $211.29 in costs for the fees phase of the instant case.

It is therefore

**ORDERED** that Child Evangelism is awarded attorney's fees in the amount of $92,229.50 and costs in the amount of $7,547.24.

**IT IS SO ORDERED.**

---

End of Document             © 2014 Thomson Reuters. No claim to original U.S. Government Works.